WAGNER, Respondent, vs. LARSEN, Appellant.

*March 9—April 5, 1921.*

*Automobiles: Collision with horse-drawn vehicle: Right of way at street intersections: Law of the road: Contributory negligence: Master and servant: Servant hired to another employer: Liability for negligence of servant.*

1. In an action to recover for injuries sustained in a collision between plaintiff's automobile and a coal sleigh, where there was no evidence that plaintiff was driving at an excessive rate of speed, and there was evidence tending to show he was no evidence that plaintiff was driving at an excessive the question of contributory negligence is for the jury.

2. An automobile proceeding west on a city street had the right of way over a team going north on an intersecting street; and even if plaintiff, who was driving the automobile, had seen the team approaching, he was under no obligation to yield the right of way or assume that the driver of the team would not yield to him.

3. Although an employee, loaned with his own consent to a special employer, becomes the servant of such employer, if an owner hires his team and driver to another to do work to be designated and as directed by the hirer, but the hirer has no authority to discharge the driver and substitute another, the driver remains the servant of the owner in matters relating to the safety and management of the team, and the owner, and not the hirer, is liable to third persons for damages from his negligent management.

4. A finding based on ample evidence must be considered as a verity in the case.

APPEAL from a judgment of the circuit court for Brown county: HENRY GRAASS, Circuit Judge. *Affirmed.*

This is an action to recover damages inflicted upon the person and automobile of plaintiff by reason of a collision with a coal sleigh in the city of Green Bay. The defendant, *Larsen,* is engaged in several industrial businesses in the city of Green Bay, in which, from April to November, he has use for a number of teams and drivers. During the winter months his regular work does not furnish employment for

such teams and drivers and, in order to keep his organization intact, he hires his teams, drivers, and wagons to others.

The F. Hurlbut Company is a corporation engaged in the retail coal business in the city of Green Bay. A short time prior to the collision the defendant hired to the F. Hurlbut Company a team, sleigh, and driver named Lardinois, at a certain stipulated price per day, to be used by the Hurlbut Company in the delivery of coal. The Hurlbut Company had on previous occasions engaged similar help from defendant.

About 6:30 o'clock in the evening of January 4, 1917, Lardinois had completed the delivery of a load of coal pursuant to instructions from the Hurlbut Company and had started for defendant's barn with a sleigh and team. He was driving north on Madison street and plaintiff was going west on Crooks street. They collided at the intersection of Crooks and Madison streets. The evidence is not very clear as to how the collision occurred. The plaintiff, seemingly, had no idea as to how it occurred, and the testimony of Lardinois is exceedingly unsatisfactory. However, it appears from plaintiff's testimony that he was going west on Crooks street, which runs in an easterly and westerly direction, in a Buick roadster, inclosed with the ordinary isinglass curtains, driving at a moderate and lawful rate of speed on the right-hand side of the street within two or three feet of the curb. He testified that after he passed the intersection of Crooks and Madison streets, possibly a few feet, he does not know how far, it just appeared as though a house dropped on top of his car. He did not see anything in front of it, and, whatever it was, it took the wind-shield and top right off the car, broke the steering wheel and glass of the wind-shield, and rendered plaintiff unconscious for a few minutes.

Lardinois testified that he was driving north on Madison street, which runs in a northerly and southerly direction.

He saw *Wagner's* car coming just before he hit the south-east line of the intersection of Madison and Crooks streets, about at the crossing, he would judge. *Mr. Wagner* was then not more than forty feet from him. He switched his horses east on Crooks street to avoid being hit. When he was hit his team was facing to the east on Crooks street at the intersection of Madison and Crooks streets, but he could not say whether he was over the center of the intersection or not. His sleigh tongue was struck by *Mr. Wagner's* car and one horse was knocked down. He did not look to see what became of the automobile, but trotted his team up Madison street, and the next day he denied that he was in an accident when asked by the Hurlbut Company concerning the same. He paid for the broken sleigh tongue upon the demand of *Larsen,* owner of the sleigh.

By special verdict the jury found that Lardinois was guilty of negligence, that the plaintiff was free from negligence, and that the former was not a servant or employee of the Hurlbut Company in the driving or the handling of the team and sleigh. Judgment was rendered in favor of the plaintiff, and the defendant brings this appeal.

For the appellant there was a brief by *Silverwood, Fontaine & McCreery* of Green Bay, and oral argument by *A. B. Fontaine* and *T. P. Silverwood.*

For the respondent there was a brief signed by *Victor I. Minahan* of Green Bay, and oral argument by *Mr. Minahan.*

Owen, J. It is strenuously argued on the part of the appellant that the plaintiff was guilty of contributory negligence. Diagrams are presented and distances are delineated thereon to indicate that the plaintiff could have seen defendant approaching when he was upwards of 200 feet east of Madison street, the conclusion being that had he exercised care he would have seen the approaching team and avoided the accident. There is no evidence that the plaintiff was driving at an excessive rate of speed. There is evidence

from which the jury might have found that he was traveling where he had a right to travel, namely, on the right side of the street in close proximity to the curb. He had the right of way over the team going north on Madison street. Even though he had seen a team approaching, as he had the right of way he had no reason to assume that Lardinois would drive the team into his automobile. The answer to defendant's argument in this respect is, even though plaintiff had seen the team approaching he was under no obligation to yield the right of way nor to assume that Lardinois would not stop and yield the right of way to him.

Upon the meager facts concerning the cause of this collision it was plainly a jury question. The evidence was abundant to show negligence on the part of Lardinois, and the jury was plainly justified in exonerating the plaintiff of any negligent conduct. Not only the testimony of Lardinois but his subsequent actions are strongly indicative of guilt. He did not pause to see what had become of the automobile. He made no effort to find out who the owner was. He did not even notice that the automobile had collided with a tree. He proceeded at a smart pace on his way. He paid for the broken sleigh tongue upon demand without protest. He denied having been in a collision when questioned by the Hurlbut Company. It is plain that the verdict of the jury in this respect cannot be disturbed.

The important question in the case is whether the defendant is liable for Lardinois' negligence, and this depends upon whether, in the performance of the negligent act resulting in the collision, Lardinois was the servant of *Larsen*. It is contended by appellant that he was the servant of Hurlbut and not of *Larsen* and that the doctrine of *respondeat superior* is applicable to the Hurlbut Company and not to *Larsen*. "It is well settled at common law that where an employee with his own consent was loaned to a special employer he became the servant of such employer." *Cayll v. Waukesha G. & E. Co.* 172 Wis. 554, 179 N. W. 771; *Standard*

*Oil Co. v. Anderson,* 212 U. S. 215, 29 Sup. Ct. 252.   To
this rule, however, an exception has been firmly established
by a well nigh unbroken line of decisions, which exception
may be stated as follows: Where an owner hires his team
and driver, or his automobile and chauffeur, or his machine
and operator to another to do work to be designated and as
directed by the hirer, the hirer having no authority by the
terms of the contract of hire to discharge the driver, chauf-
feur, or operator and substitute another, the driver, chauf-
feur, or operator remains the servant of the owner in mat-
ters relating to the safety and management of the team,
automobile, or machine, and the owner is liable to third
persons for damages resulting from the negligent manage-
ment or operation of the team, automobile, or machine by
such servant.  *Quarman v. Burnett,* 6 M. & W. 499; *Dris-
coll v. Towle,* 181 Mass. 416, 63 N. E. 922; *Shepard v.
Jacobs,* 204 Mass. 110, 90 N. E. 392; *Morris v. Trudo,* 83
Vt. 44, 74 Atl. 387, 25 L. R. A. N. S. 33; *Joslin v. Grand
Rapids Ice Co.* 50 Mich. 516, 15 N. W. 887; *Frerker v.
Nicholson,* 41 Colo. 12, 92 Pac. 224, 13 L. R. A. N. S. 1122;
*Wilbur v. Forgione & Romano Co.* 109 Me. 521, 85 Atl. 48;
*Standard Oil Co. v. Anderson,* 212 U. S. 215, 29 Sup. Ct.
252; *Gerretson v. Rambler G. Co.* 149 Wis. 528, 136 N. W.
186; *Ouellette v. Superior M. & M. Works,* 157 Wis. 531,
147 N. W. 1014.   See, also, notes in 37 L. R. A. 33; 13
L. R. A. N. S. 1122; 25 L. R. A. N. S. 33; 38 L. R. A. N. S.
973; L. R. A. 1918E, 121.

The reason is that the hiring is not of the team distinct
from the driver or of the driver distinct from the team, but
is the hiring of the entity composed of the two.   While the
hirer acquires dominion or authority over the entity to
designate the work that shall be done and direct the manner
of doing it, he acquires no authority to direct how the team
shall be driven, managed, or cared for, nor can he divide
the entity by separating the driver from the team.   He may

dispense with the services of the entity—the driver and the team—but he cannot discharge the driver and substitute another. The safety and well-being of the team is a matter of concern to the owner. It may be greatly damaged from the standpoint of health and soundness, as well as disposition and habits, by unskilful management and inconsiderate and cruel treatment. Hence the owner says, in effect: "I will not hire my team to be driven by a stranger, but I will hire my team with a driver of my own choosing, one in whom I repose trust and confidence. You shall not discharge him and substitute another. That is a right I reserve." It is entirely possible and consistent, as pointed out in *Driscoll v. Towle,* 181 Mass. 416, 63 N. E. 922, for the driver to be the servant of the hirer in the general performance of the work and remain the servant of the owner in the details of driving, caring for, and managing of the team.

The last load of coal delivered by Lardinois on the day in question contained three tons for three different customers. The coal company could direct the route he should take, the customer he should first serve, to sprinkle the coal, and to collect before delivery, etc. In all such respects he was acting as the servant of the coal company, and if he had driven the heavily loaded wagon over an adjacent lawn in approaching a customer's dwelling the coal company would no doubt have been liable for the damage. But this collision resulted from his negligence in the immediate handling of the team. In this respect he was not the servant of the coal company. He was the servant of *Larsen,* and for his negligence *Larsen* and not the coal company is liable.

In this case the jury found that Lardinois, at the time of the collision, was not the servant or employee of the F. Hurlbut Company in the driving or handling of the team and sleigh. Under the instructions given by the court in submitting this question to the jury, its answer to the question was tantamount to a finding that the coal company

acquired no authority by virtue of the contract of hiring to discharge Lardinois as the driver of the team. As the finding is based upon ample evidence it must be considered as a verity in the case, and the respective liability of the parties is governed by the principle embodied in the exception above stated.

Attorneys for appellant have dwelt upon the proposition that *Larsen* is not the principal contractor, hence not liable. We agree that *Larsen* was not a principal contractor, but we have demonstrated, we trust, that his liability is not dependent upon that fact. By the application of well-settled principles of law to the facts as found by the jury the liability of the defendant is plain. The judgment must stand.

*By the Court.*—Judgment affirmed.