PACKARD and another, Appellants, vs. INDUSTRIAL COM-
MISSION and others, Respondents.

*October 10—November 7, 1933.*

For the appellants there was a brief by *Olin & Butler,* and oral argument by *Byron H. Stebbins,* all of Madison.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondents Hobart Land Company and Norwich Union Indemnity Company there was a brief by *North, Parker, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *F. N. Trowbridge.*

NELSON, J.   Sylvia Murphy, the applicant, is the widow of Robert Murphy who contracted pneumonia while employed by either Dorr Packard or Hobart Land Company which resulted in disability and ultimately in his death.   The commission concluded that at the time of the onset of such disability Murphy was in the employ of Packard; that such disease was an injury growing out of and incidental to such employment; that the applicant was his wife, living with him at the time of his injury and death, and that she was entitled to compensation.   The commission filed a memorandum decision in which it found the facts upon which its conclusions were based.   An award against Packard and his insurer, Travelers Insurance Company, was entered.

The principal question to be determined is whether the conclusion of the commission that Murphy was in the employ of Packard at the time of the onset of disability is sustained by credible evidence.

The facts are not in dispute.   Packard's business was that of superintending the construction of golf courses.   In 1928 Packard entered into a written contract with Hobart Land Company whereby he agreed to serve that company as super-

intendent of the work of constructing a golf course near Green Bay and whereby he agreed to furnish at certain specified rates all small tools and equipment necessary for the efficient progress of the construction work. It was agreed that all labor should be paid by the company according to a specified scale, which so far as material to this controversy was as follows: "Laborers per hour, .40. Team and teamster per hour, .70."

Murphy had been employed for a short time by Packard at Laona prior to the commencement of the construction work for the company. He and others who had been employed at Laona were assured by Packard that if they would come to Green Bay he would give them employment. Murphy came to Green Bay in response to said assurance and was given the job of driving and caring for Packard's team. Packard as superintendent hired his own team with Murphy as its driver. The company made one payment directly to Murphy which covered his wages at forty cents per hour for the first week. Thereafter payments for the team and driver were made by the company direct to Packard. Such payments were based on the actual time that the team and Murphy worked on the job, figured at seventy cents per hour. The agreement between Packard and Murphy was that Murphy would be paid straight time at forty cents per hour regardless of whether the team and he were steadily employed on the construction work. It was Murphy's duty to care for and drive Packard's team and while upon the job to perform such teaming work as he was directed by the company to perform. He slept in a tent provided by Packard which was located close to the horse barns. The evidence tends to show that while Murphy was engaged in the work of driving the team he was exposed to rain storms and also that his bunk was so located that the bedding thereon became wet and damp from the rains.

The plaintiffs contend that this controversy involves merely a question of law and that therefore this court is not

bound by the commission's conclusion that Murphy was in the employ of Packard; that as a matter of law Murphy was the employee of the company because he was under its direction and control while performing construction work.

It is undisputed that the team which Murphy drove and cared for was Packard's team; that Murphy was employed to drive it and to care for it; that Murphy was paid $4 per day straight time by Packard, except for his first week's work, regardless of whether or not he was actually engaged full time in the work of driving his team on the construction job.

We think it clear that Packard as an individual and as the owner of his team, undoubtedly had the right to select the particular man whom he desired to have charge of his team; that he had the right to control the details regarding the care of the team and the manner in which it should be driven and had the right individually to discharge Murphy, although he himself was an employee of the company and was authorized to hire or furnish teams and teamsters. At the time of Murphy's injury (the onset of his disease) and for some time prior thereto, Packard was paid $7 per day for each day that his team and Murphy worked, and Packard paid Murphy wages based on straight time.

We think this case is ruled by the principles of law stated in *Gerretson v. Rambler Garage Co.* 149 Wis. 528, 136 N. W. 186, and *Wagner v. Larsen,* 174 Wis. 26, 182 N. W. 336. The latter case involved the question as to whose employee the driver of the team was, and who was liable as principal under the doctrine of *respondeat superior.* It was there held that where an owner lets his team and driver to another to do work as directed by the hirer, the hirer having no authority by the terms of the contract of hire to discharge the driver, the driver remains the servant of the owner in matters relating to the safety and management of the team and is liable to third persons for damages re-

sulting from the negligent management of the team. Many cases were cited in support of the rule stated. Mr. Justice OWEN, speaking for this court, stated the reason for the rule as follows:

"The reason is that the hiring is not of the team distinct from the driver or of the driver distinct from the team, but is the hiring of the entity composed of the two. While the hirer acquires dominion or authority over the entity to designate the work that shall be done and direct the manner of doing it, he acquires no authority to direct how the team shall be driven, managed, or cared for, nor can he divide the entity by separating the driver from the team. He may dispense with the services of the entity—the driver and the team—but he cannot discharge the driver and substitute another. The safety and well-being of the team is a matter of concern to the owner. It may be greatly damaged from the standpoint of health and soundness, as well as disposition and habits, by unskilful management and inconsiderate and cruel treatment. Hence the owner says, in effect: 'I will not hire my team to be driven by a stranger, but I will hire my team with a driver of my own choosing, one in whom I repose trust and confidence. You shall not discharge him and substitute another. That is a right I reserve.'"

The following decisions, most of which involve workman's compensation laws, are to the same effect: *De Noyer v. Cavanaugh,* 221 N. Y. 273, 116 N. E. 992; *McNamara v. Leipzig,* 227 N. Y. 291, 125 N. E. 244; *Comerford's Case,* 224 Mass. 571, 113 N. E. 460; *Clancy's Case,* 228 Mass. 316, 117 N. E. 347; *Centrello's Case,* 232 Mass. 456, 122 N. E. 560; *State ex rel. D. M. Gilmore Co. v. District Court of Hennepin County,* 147 Minn. 12, 179 N. W. 216; *Tschida v. Bratt,* 179 Minn. 277, 228 N. W. 935; *Golden & Boter Transfer Co. v. Brown & Sehler Co.* 209 Mich. 503, 177 N. W. 202; *Stoddard v. Cooper-Widenmann Construction Co.* 220 Mich. 643, 190 N. W. 693; *Winslow's Case,* 232 Mass. 458, 122 N. E. 561; *Latshaw v. McCarter,* 79 Ind. 623, 137 N. E. 565.

The plaintiffs cite *Yolo Water & Power Co. v. Industrial Acc. Comm.* 35 Cal. App. 14, 168 Pac. 1146, a case which dealt with facts similar to those of this case. In that case the supreme court of California reached a conclusion apparently different from ours. However, in that case it appears that the name of the employee therein was recorded on the company's books; that the employee had worked for the company under Wallis its foreman, who owned the team, innumerable times as a laborer; that he had always dealt with Wallis as foreman and had always been paid directly by the company's check. Those facts are sufficient to distinguish that case from this.

While the company at all times undoubtedly had the right to say that the Packard team and driver should not continue in the construction work and to terminate the employment of that team and driver as an entity, it had no right to discharge Murphy as the driver of Packard's team. A discharge of the team and driver from the construction work would obviously not operate as a discharge of Murphy as the driver of Packard's team. There is no evidence in the record tending to show that the company had the right to sever the team and teamster entity and discharge the driver nor is there anything in the record to show that the team alone was let to the company to be driven or placed in charge of a driver selected by it or someone else other than its owner as appeared with respect to the truck in *Czarnetzky v. Booth,* 210 Wis. 536, 246 N. W. 574.

Under all of the circumstances we think that the conclusion of the commission, based upon the facts found, that Murphy was Packard's employee at the time of the onset of the disease, is sound.

It is further contended that no written notice was given to Packard within thirty days after the occurrence of the accident as required by the then existing law. On this point

the commission found that "Packard knew of the illness on the first day, and arranged for taking deceased to the hospital. At or about that time he heard talk among the men to the effect that deceased's illness was attributed to the damp conditions, both on the grounds and in the tent. He was inclined to the same opinion, but thought he was not legally liable. It is evident that he had actual notice of the injury at or about its occurrence." Packard testified that during the day that Murphy came down with pneumonia and during the next few days there were reports among the men that came to his ears that possibly the damp condition of the bedding or getting wet out on the job contributed to Murphy's illness. This, we think, is sufficient to justify an inference that Packard had actual notice. *Van Domelon v. Industrial Comm.* 212 Wis. 22, 249 N. W. 60; *Zurich Gen. Acc. & L. Ins. Co. v. Industrial Comm.* 203 Wis. 135, 233 N. W. 772.

*By the Court.*—Judgment affirmed.