STATE EX REL. COOPER, imp., Respondent, vs. BAUMANN
and others, Appellants.

*May 12—June 6, 1939.*

For the appellants there was a brief by *Walter J. Mattison,* city attorney of Milwaukee, and *Omar T. McMahon* and *Mathias Schimenz,* assistant city attorneys, and oral argument by *Mr. McMahon.*

*Max Raskin,* attorney, and *H. A. Kovenock* of counsel, both of Milwaukee, for the respondent.

FRITZ, J.   This action was brought to enforce compliance by the school board and the city service commission of the city of Milwaukee with sec. 16.765, Stats. (enacted as ch. 107, Laws of 1937), which provides:

"All officers and employees of the school board of any city of the first class with the exception of superintendents, assistant superintendents, principals, teachers and substitute teachers, actually engaged in teaching, shall be selected and have their tenure and employment status determined in accordance with the provisions of sections 16.45 to 16.76 and in accordance with the rules adopted thereunder and the charter ordinance applying to the board of city service commissioners of each such city."

Under the practice heretofore followed by the school board, the engineer-janitor in each of the one hundred five public school buildings was hired under the civil-service statutes.   In addition, some three hundred twenty-two men and

women have been employed in the school buildings under the school board's control in doing the sweeping and cleaning, firing boilers, acting as custodians and matrons, and performing the other janitorial work. These three hundred twenty-two persons (hereinafter called "helpers") have been hired by and held their positions at the will of the engineer-janitor for the building in which they worked. The helpers are paid out of an annual lump sum allowance made by the board to each engineer-janitor, and termed, for convenience, the salary of the engineer-janitor. The petitioners claim that the relation of employer and employee exists between the board and the helpers; that the practice heretofore followed in employing them conflicts with and is prohibited by sec. 16.765, Stats.; and that the civil-service statutes must be followed in the selection and hiring of the persons who are to do the work as such helpers. On the other hand, the defendants claim that the engineer-janitors are "independent contractors," and that consequently the helpers are employees of independent contractors, and as such their selection, tenure, and employment is not governed by secs. 16.45 to 16.76, Stats. The court held that the engineer-janitors, as well as their helpers, are employees, subject to the control of the board, and that consequently it is the duty of the city service commission to establish and record the number of positions of such helpers and their duties; and to make up lists of persons eligible for appointments to vacancies in such positions; and that it is the duty of the school board to select from such eligible lists the persons who are to do the work as helpers; and to fix a salary or wage schedule for such positions. The judgment, which was entered accordingly and is under review herein, was based upon findings, which (so far as here material) are to the following effect: Some three hundred twenty-two men and women employed on a monthly, weekly, and hourly basis perform janitorial services in one hundred five school and other buildings which are under

the supervision, control, and management of the school board. The janitorial work is done under the supervision of the school board, which appoints, in accordance with the requirements of the city's civil-service laws and regulations, an engineer-janitor for each building, and which annually appropriates a specific amount, depending on the size and other conditions of the building, necessary to pay for all janitorial services for each building. Out of the appropriation, a specific sum is paid to each engineer-janitor. That sum is voted by the board in the same manner as salaries are voted to all of its other employees. The engineer-janitors do not participate in negotiating the salary schedules arrived at by the board from year to year. Each engineer-janitor in turn pays to each of his helpers whatever amounts may be necessary for his services. The board reserves entire control of the method and conduct of the janitorial work whether it is performed by the engineer-janitor or by his helpers, and this control is lodged by the board in a "supervising engineer-janitor," who is likewise one of its employees; and the immediate control both of the engineer-janitor and his helpers is often carried out and directed by the principal in charge of the school. The board furnishes all materials and tools necessary to perform the janitorial services. The city of Milwaukee, as the employer, has paid workmen's compensation to injured helpers; and has made the contributions to the unemployment insurance fund for the benefit of the helpers, although there are not over five of the one hundred five schools in which as many as six helpers are employed. Likewise, the city made demands upon the federal government and secured exemption from the payment of any social-security tax for the helpers on the ground that they are in the public employment. Helpers performing services as firemen were not required to secure stationary-engineer licenses, although persons performing similar services, who are not in the employ of the federal, state, or municipal governments

were required under the city ordinances to have such licenses. The board required each engineer-janitor to file a monthly report stating the amount he paid to his helpers, and those reports are filed with the board and the city service commission. In some cases an engineer-janitor has been transferred from one school to another without a change in the helpers at the first school. The court concluded that the persons so employed as helpers are employees of the school board within the provisions of sec. 16.765, Stats., and that the positions which they occupy are subject to the classified services of the Civil Service Act governing employees of the city of Milwaukee.

On this appeal the school board contends that the material portions of the court's findings and conclusions are unsupported and erroneous; that the three hundred twenty-two janitorial helpers,—as well as certain concerns (whose business is the washing of windows and who are engaged to wash windows at some of the schools) and their employees,— were all engaged by and are employees of the engineer-janitors, and are not city employees; and that sec. 16.765, Stats., properly construed, does not make janitorial helpers city employees or the positions which they hold city positions. In support of those contentions the school board claims that the contracts between it and the engineer-janitors are a special type of independent contract, under which the engineer-janitor's status is in the nature of that of an independent contractor; that such contracts are not prohibited by law and are valid; and that under them the janitorial helpers are not city employees subject to its Civil Service Act.

Before proceeding to consider those contentions, it must be noted that there is no controversy in relation to employees of the concerns engaged in the business of washing windows. The petitioners do not claim that they are employees of the school board, or subject to appointment under the civil-service laws; and no determination was made by the trial court

in respect to them. A review of the record discloses that the evidence fully warrants the court's findings. In addition to the facts found as stated above, there was evidence establishing the following additional matters, which likewise support the court's conclusion that the control and supervision which the school board has and exercises over the engineer-janitors are such as to constitute their status that of employees of the school board and not that of independent contractors. All of them were employed and worked under an "Engineer-Janitor's Code," which the board had adopted and in which there were the following provisions in connection with directions in detail in respect to the janitorial work, to wit:

"All engineer-janitors shall be under the general supervision and control of the supervising engineer-janitor.

"The engineer-janitor shall be at all times under the immediate direction of the principal. . . .

"He shall report at the school building not later than 7 a. m., but earlier, if necessary, on school days, and be in constant attendance during the entire day, including the dinner hour, unless, with the principal's consent, some responsible assistant is left in charge, for whose acts the engineer-janitor shall be responsible. . . .

"The method of sweeping and cleaning, tools and apparatus for the same, and formulas for cleaning and sweeping mixtures, shall be prescribed by the supervising engineer-janitor from time to time. No materials for sweeping and cleaning other than those furnished by the board shall be used by the engineer-janitor. . . .

"Whenever additional outside washing is ordered by supervising engineer-janitor, additional compensation shall be paid, according to the basis provided in the salary schedule. . . .

"The supervising engineer-janitor shall make special provisions covering the cleaning of inaccessible places as skylights, flues, air shafts, and painted walls. . . .

"The engineer-janitor shall . . . report any tampering with the heat regulating apparatus to the supervising engineer-janitor. . . .

"Operation of the ventilating apparatus shall be in accordance with instructions that shall be issued from time to time by the supervising engineer-janitor. . . .

"Vacation periods not to exceed twenty-one days shall be arranged for with the supervising engineer-janitor. . . . The engineer-janitor shall be subject to such special regulations relative to care of building and supplies during vacation periods as may be issued from time to time by the supervising engineer-janitor. . . .

"Engineer-janitors shall perform such other duties usually attendant upon janitorial service, not inconsistent with those above defined, as may be deemed necessary by the principal or supervising engineer-janitor. . . .

"Principals shall see that these rules are strictly complied with and report any violation thereof to the supervising engineer-janitor."

Furthermore it appears that the engineer-janitors frequently consulted Emil J. Horn, the supervising engineer-janitor, as to how the work was to be performed, and when a principal's report showed janitorial work to be unsatisfactory, Horn investigated and if he found that a new helper needed coaching he gave the necessary orders. Sometimes Horn would tell an engineer-janitor to get rid of a helper who did not "fit into the picture." Principals also gave orders directly to the helpers concerning odd jobs which the principal wanted done around the school. Where a helper was on duty in a building used for social-center purposes during the evening, the engineer-janitor was present only occasionally, and the principal gave most of the orders to the helper, who carried out the principal's orders. In the monthly reports, which the engineer-janitors had to file, the school board required them to state the name and address and duties of every helper, his hours per day, and rate per hour, and the total amount paid to him, and to have his signed receipt therefor. The board kept records of "rates of compensation paid engineer-janitors' helpers," and in Janu-

ary, 1933, adopted a resolution that "the minimum wage for all the help employed by janitors be and the same is hereby fixed at forty cents per hour." On some occasions, when an engineer-janitor was absent or there was a vacancy in the position, orders to the helpers were given directly by the principal or some other employee working under the supervision of the school board; and upon the transfer of an engineer-janitor to another school the helpers remained at the same school under the succeeding engineer-janitor.

The appointment of the engineer-janitors by the school board, and its supervision and control over them and the performance of all janitorial services, as stated above, was clearly authorized by and entirely in accord and consistent with the provisions in sec. 7, ch. 459, Laws of 1907, that,—

". . . The board [of school directors] shall also have the power, subject to the powers and regulations of the city service commission, to employ all janitors necessary in the schoolhouses of their city and to fix their compensation, but the principal of each school shall be custodian of all buildings and rooms occupied by the school over which he presides and shall have the general supervision over the same, and shall direct the janitor thereof in relation to the keeping and care of such buildings and rooms."

The relationship thus authorized in respect to "all janitors necessary in the schoolhouses" is characterized as one of employment,—as distinguished from that of an independent contractor,—by the provisions that the board's power "to employ" is subject to the city service commission's powers and regulations; that the board shall have the power to "employ all janitors" and to "fix their compensation,"—not contract with them as independent contractors; and that the school "principal . . . shall have the general supervision over . . . and shall direct the janitor thereof in relation to the keeping and care of such buildings and rooms." Under and in accordance with those provisions the board has, in fact, been employing the engineer-janitors under the regulations of the

civil-service commission; it has promulgated the Engineer-Janitor's Code and thereby regulated the janitorial work in detail, and gave the principals and the supervising engineer-janitor, working under its supervision, the right to direct and control in detail the work of the engineer-janitors; and in their employment the latter, as well as the helpers, worked under and were controlled by that code. The facts as to the power vested in the board by sec. 7, ch. 459, Laws of 1907, and its exercise of that power by promulgating the Engineer-Janitor's Code and controlling the work of the engineer-janitors directly or through its principals and supervising engineer-janitors refutes the defendants' contention that the status of the engineer-janitors is in the nature of an independent contractor. On the contrary, the facts compel the conclusion,—in view of the rule that where the right to control the details of the work resides in an employer, the relationship of master and servant will be held to exist rather than that of independent contractor—(*Madix v. Hochgreve Brewing Co.* 154 Wis. 448, 143 N. W. 189; *Kolman v. Industrial Comm.* 219 Wis. 139, 141, 262 N. W. 622; *McKesson-Fuller-Morrisson Co. v. Industrial Comm.* 212 Wis. 507, 515, 250 N. W. 396; *Nestle's Food Co. v. Industrial Comm.* 205 Wis. 467, 472, 237 N. W. 117; *Montello Granite Co. v. Industrial Comm.* 227 Wis. 170, 278 N. W. 391)—that the relationship which existed between the board and the engineer-janitors was that of master and servant, and that consequently the helpers are not employees of independent contractors. It follows that the board, in allowing its engineer-janitors to hire the helpers, was permitting them to hire subemployees, who thereby became likewise employees of the board. *State ex rel. Bartholomew v. Witt, Treas.,* 3 Ohio App. 414, 418; *People ex rel. Brennan v. Ellicott,* 243 Ill. App. 374. Consequently, there is applicable to the positions held by the helpers the provision in sec. 16.765, Stats. 1937, that "all . . . employees of the school board

. . . shall be selected and have their tenure and employment status determined in accordance with the provisions of sections 16.45 to 16.76 and in accordance with the rules adopted thereunder and the charter ordinance applying to the board of city service commissioners. . . ." Since its enactment by ch. 107, Laws of 1937, that provision governs and controls the selection, tenure, and employment status of all who are to work in those positions.

*By the Court.*—Judgment affirmed.