STATE EX REL. SOTTILE, Appellant, vs. MENSING and others, Respondents.

*May 19—June 12, 1941.*

*Max Raskin* of Milwaukee, for the appellant.

For the respondents there was a brief by *Walter J. Mattison,* city attorney, and *John J. Dolan,* assistant city attorney, and oral argument by *Mr. Dolan.*

FRITZ, J.   The issues on this appeal are whether the relator, Peter Sottile, and one hundred and twenty others similarly situated, who drive horse-drawn vehicles used in connection with collecting and removing garbage, ashes, rubbish, and snow, and otherwise keeping the streets clean and safe, are employees of the city of Milwaukee or of the contracting team owners whose teams are hired by the city's department of public works; whether the city service commission·shall in- quire into the nature, tenure, and compensation of those

one hundred and twenty-one men and shall classify their places of employment with respect to the duties thereof for the purpose of establishing grades and fixing standards of examination, and thereupon creating a list of eligibles from which the commissioner of public works may appoint to fill the vacancies; and whether he shall thereafter requisition the city service commission for eligibles to fill vacancies. For the purpose of passing upon these issues, it suffices to note the following facts, most of which were found by the court and all of which were established by the evidence. The relator and the other teamsters in question were and are employed by the team owners who are engaged in the general teaming and trucking business and who own and maintain for these purposes the necessary horses and equipment and stables. Each teamster is required by the team owner, who employed him, to clean and take care of the horses which he drives and remove the bedding of the previous night, and harness them up when they are taken out on a job for the city, and also to clean and otherwise take care of them on Fridays, Saturdays, and Sundays when they are not used on a city job. The owners permit only their teamsters to drive the teams. For many years the city has been hiring such teams from the firm of Balistrieri Brothers, by whom the relator Sottile has been employed since 1931, and also from a number of similar contracting team owners; and these teams and the teamsters driving them are used to help, as directed by city officials or employees, in the collection and removal of garbage, ashes, rubbish, and snow. The commissioner of public works is duly authorized and empowered to contract on behalf of the city for the hire of such teams for such teaming services, and for that purpose sums are set up by the common council in the budget for the department of public works. The department contracts with the team owners for the services of each team; and the rental of the team services from the contracting team owners includes the horses, with a teamster and the necessary harnesses and other

equipment supplied by the owner. When the services of a team are needed by the city, the department notifies the owner, who is next on the list, that his team can go to work and arranges to furnish him with a trailer or such other special equipment as may be necessary to perform the service. Each owner furnishes with each team a teamster of his own choosing, whom he may retain in his employ or discharge or replace with another at his own will and judgment; and each teamster so chosen is in full charge of the team so intrusted to him and exercises full control in the driving and management thereof at all times; and is the only one allowed by its owner to drive the team. In thus hiring the teamster and designating how the team shall be cared for, and driven and managed when in use for the city, as well as at other times when the teams and the drivers are used by the owners to render team services for others than the city, each owner exercises over his teamsters the authority required under the law to constitute the relationship of master and servant between the owner and his teamsters. The city, its officers, and employees have no authority to designate a particular teamster to drive a certain team or to discharge a teamster; but when he first applies to an owner for the job, the latter sends him to the city service commission for certain mental tests, such as reading street signs, and also for a physical examination by a city physician. If the results are satisfactory the commission issues to the applicant a driver's card upon which there is printed, "Teamster, City of Milwaukee. Mr. —— is eligible to work as teamster." Underneath there is a place for the applicant to sign his name and address, and there is also the printed statement, "Report change of address to foreman." In the department for the collection and disposal of garbage printed rules and regulations for the garbage collectors are issued to each teamster and he has to sign his name when he receives a copy thereof. These rules and regulations are also given to the city's ward laborers and others working in the crew, including a helper in the city's

employment, who rides with the teamster, and both of whom do an equal amount of work. In the collection of garbage and in driving a team the teamsters follow certain rules laid down by the city; and its supervisors direct the work and shift the men around to different spots and have full control of these operations and the time put in by the men.

The common council has not created any position in the city service, such as "teamster" or otherwise, for persons who drive teams for contracting team owners, although the council has otherwise created and specified by an ordinance the offices and positions in the various departments, bureaus, boards, and commissions which are under the council's control in the city service, including the "Collection Division" of the "Bureau of Garbage Collection and Disposal;" and the council has by resolutions also authorized the employment and hiring of certain other help under certain titles and in the numbers listed in such resolutions. Moreover, although the common council set up in the city's budget for the year 1940 various sums for team and truck hire, there is no mention in the budget for the services of teamsters who drive the teams for the contracting team owners. On the other hand, city ordinance No. 163 provides for fixing the price of the rental for the team service, which includes the "teamster;" and also provides for a waiver to be signed by a team owner which reads as follows:

"To the City of Milwaukee, Department of Public Works: The undersigned team owner and employer of teams in various wards hereby requests that the city of Milwaukee keep the time record and pay directly to such teamster (or any substitute who may be employed in his stead), such wages as are due him from me."

The payment under these waivers by the city directly to teamsters of moneys due them from their employers, the team owners, was arranged with the consent of such owners for the purpose of assuring the teamsters that they would receive the minimum wages prescribed by the city for comparable work

and to safeguard the teamsters against occasional attempts on the part of some of their employers to exact work at unfair and inadequate wages. Under and in accordance with this arrangement the city, instead of paying to the team owner the full sum of $10.42 per day, payable to him for the team services, deducts therefrom the sum of $5 a day for the benefit of the teamster; and in this connection there is used in making the payments to them the regular form of pay roll used for city employees, with the phrase "certification of appointments" and signature by the board of city service commissioners, except that the sheets are differently colored, and are headed for "Services Rendered on Teams Employed Under Direction." A daily record of the hours to be credited to each team and each team driver is kept separately and there is a separate record from which the pay roll record is totaled at the end of the half month when this dummy pay roll is prepared. The names of the various team owners and the amounts they have earned are listed and then below the drivers are listed. The list on the back of two sheets is headed "Certification of Appointments" and that is filed by the secretary of the board of city service commissioners; there is another heading "To be signed by the person checking this pay roll with the records of his department" signed by the pay-roll clerk, and a "Certification by Head of Department" is signed by the bureau superintendent; and finally the comptroller audits and signs the pay roll. The team owners and the teamsters are paid by orders payable by the city treasurer.

Upon the foregoing facts the court concluded,—so far as here material,—that the relator is an employee of Balistrieri Brothers and not of the city, and that because the common council has not created the position of teamster in the city service for persons driving teams for contracting team owners, secs. 16.46, 16.50, and 16.51, Stats., which prescribe the duties and powers of the board of city service commissioners of Milwaukee, are not applicable or controlling herein; that the

commissioner of public works cannot requisition the city service commission for an eligible list to fill vacancies for a nonexistent position; and that the defendants are entitled to judgment dismissing the action on its merits. These conclusions and the judgment entered thereon must be sustained. It does not appear that either the city charter or the ordinances or resolutions adopted by its common council ever authorized the commissioner of public works to hire as employees of the city the teamsters engaged by the team owners to take care of and drive the teams hired by the city for use in the collection and removal of garbage, ashes, rubbish, and snow. Neither does it appear that the common council ever set up in its wage ordinance or otherwise created the position of teamster for persons driving teams for the contracting team owners. On the other hand it clearly appears that in relation to the teams used for the performance of the team service in question for the city there existed a contractual relationship between but the owners of the teams and the city. Under this relationship these owners were clearly independent contractors who, in contracting as such to render team service for the city, were to provide in connection with their teams the teamsters necessary to perform, as employees of such owners and primarily under their ultimate direction and control, all of the work required in taking care of and driving the team and in the collection and removal of the garbage, etc., by means of the team service contracted for. Under this contractual relationship between the city and the contracting team owners, "The hiring is not of the team distinct from the driver or of the driver distinct from the team, but is the hiring of the entity composed of the two." *Wagner v. Larsen,* 174 Wis. 26, 30, 182 N. W. 336. Under these circumstances there was consequently no occasion for any department, officer, or agent of the city to also employ the relator or any of the similarly situated teamsters as an employee of the city. On the contrary, the evidence as to their employment and the supervision and control of

their services by the team owners meets all tests required in establishing the relationship of master and servant between the teamsters and the owners of the teams. The mere fact that the city, as the hirer of the teams, had the general dominion or authority to determine and prescribe when and what team service was to be performed from time to time and the general rules and regulations in relation thereto, and to also prescribe the physical and mental tests which had to be met by those who applied to the team owners for employment as teamsters in order to render such applicants qualified to serve in that employment, did not operate to constitute them employees of also the city. *Wagner v. Larsen, supra; Packard v. Industrial Comm.* 213 Wis. 1, 250 N. W. 768; *State ex rel. D. M. Gilmore v. District Court of Hennepin County,* 147 Minn. 12, 179 N. W. 216; *Tschida v. Bratt,* 179 Minn. 277, 228 N. W. 935; *Stoddard v. Cooper-Widenmann Construction Co.* 220 Mich. 643, 190 N. W. 693.

Neither can they be deemed to have become employees of the city by reason of the special pay rolls kept by the city in relation to the teamsters and its payments directly to them, under the waivers signed by the team owners, of the sum of $5 per day which the city deducted from the $10.42 per day, payable to the owners as team hire. As these payments were so made with the consent of all concerned, for the purposes of safeguarding teamsters from attempts by such owners to exact work at unfair or inadequate wages and of assuring to teamsters the payment of at least the minimum wages prescribed by the city to be paid by independent contractors or otherwise for comparable work rendered in the performance of contracts with the city, the amounts so deducted and paid to the teamster were clearly not in discharge of any obligation owing to him by the city as his employer or otherwise.

The decision in *State ex rel. Cooper v. Baumann,* 231 Wis. 607, 286 N. W. 76, upon which the relator relies, is not in point. In that action, compliance by the school board and

city service commission of Milwaukee with a statute, which provided that all employees of the school board were to be selected and have their tenure of employment status determined in accordance with the civil-service act affecting the city, was enforced in respect to certain persons who had been employed in school buildings under the school board's control in performing janitorial work upon being hired therefor by the janitor-engineers in charge of the buildings. That determination was based largely upon the conclusions that the persons in question were hired as helpers by the janitor-engineers who occupied positions created by statutes under which their relationship was characterized as one of employment as distinguished from that of independent contractors, and that as the relationship which existed between the board and these janitor-engineers was that of master and servant, the persons so employed by them as their helpers were not the helpers of independent contractors but were instead subemployees of the janitor-engineers; and because the board had permitted its janitor-engineers to hire these helpers as such subemployees, they thereby became likewise employees of the board who were to be selected and have their tenure of employment status determined in accordance with the civil-service act of the city. There can be no similar conclusions, however, in the case at bar. The team owners do not occupy any position because of which their relationship with the city can be considered to be one of employment. On the contrary, they clearly are independent contractors. Consequently, the teamsters who are employed by these independent contractors to take care of their teams, and to help them also in performing their team service for the city when required by it, cannot be considered as subemployees who were appointed by an employee of the city with its permission and who thereby became likewise its employees. And as the teamsters did not become city employees in that or any other manner and the common council has not

created the position in the city service of teamster for persons driving teams for a contracting team owner, secs. 16.46, 16.50, and 16.51, Stats., are not applicable to the relator's employment; and consequently he is not entitled to relief prayed for in his petition.

*By the Court.*—Judgment affirmed.