BOEHCK EQUIPMENT COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION and others, Appellants.

*October 13—November 14, 1944.*

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the appellants Luety Brothers and Hartford Accident & Indemnity Company there was a brief by *La France & Edwards,* attorneys, and *Alfred E. La France* of counsel, all of Racine.

For the respondents Boehck Equipment Company and Employers Mutual Liability Insurance Company there was a brief by *Bloomquist, Watson, Wolf, Iding & Trembath* of Milwaukee, and oral argument by *J. A. Bloomquist* and *Katherine B. Iding.*

FRITZ, J.    The Industrial Commission's order and award, which the circuit court set aside, required the payment of compensation to Christopher Thim by Boehck Equipment Company (hereinafter called "Boehck") and its compensation insurance carrier.   They contend on this appeal, as they did in the circuit court, that when Thim was injured he was working as the employee of Luety Brothers (a copartnership hereinafter called "Luety"), and not of Boehck, as the commission and its examiner found and concluded in ordering the payment of compensation by Boehck.   The award was reversed and set aside by the circuit court upon the ground that "the commission has erred, as a matter of law, in that it has ignored the basic legal test of employment, namely: Who has the right to control the details of the employee's work;" and in that respect the court concluded that Boehck had absolutely no right to control the details of Thim's work, and exercised none; that Boehck did not even have a representative on the ground to see how the job was being done; that it had no responsibility for the job being well-done, and gave no direction to Thim; that these came entirely from Luety; and that absolutely all that Boehck did was to lease to Luety a machine.

In order to determine whether the court erred,—as appellants contend,—in setting aside the commission's award upon the ground stated by the court, there must be noted the following facts, established by evidence as to which there is no dispute in any material respect, to wit: At the time Thim, on

October 3, 1942, sustained the injury for which compensation was awarded, he was engaged as the operator of a machine used for excavating ditches. He had been employed as such operator during the three years prior to September 1, 1942, by Henry J. Gloede, Jr., of Racine, while he owned the machine until his death in July, 1942; and thereafter by the administrator of Gloede's estate, while it owned the machine. Gloede's business was the renting of such machines to contractors, and he did not permit a machine to be rented unless it was operated by one of his employees, because the machines were large and expensive, and required the services of an experienced and skilful operator to keep them in operation and good condition. When the machine in question was rented to various contractors, Gloede sent Thim as his employee to operate it; and Thim, at all times, considered himself an employee of Gloede who, as his employer, paid him his wages and also paid his unemployment insurance, social security tax, and workmen's compensation insurance. When Gloede died, the machine, with Thim employed as the operator thereof by Gloede, was rented to Luety for excavating on a job at Madison at a rental of $6 per hour, to be paid by Luety. In addition the latter was to pay Thim an extra hour's pay for greasing the machine; but the gasoline, oil, and grease used for operating it were to be furnished by Gloede. Upon those terms the administrator continued to rent the machine, with Thim as the operator thereof, to Luety for use on the job at Madison, and also on a job at Beloit commencing on August 18, 1942. The administrator directed Thim to accompany the machine to Beloit and operate it there, and do the excavating required by Luety on a job which they had there. On September 1, 1942, the administrator sold the machine to the Boehck corporation, which was likewise engaged in the business of renting such machines to contractors. Until September 10, 1942, Boehck continued the renting of the machine to Luety for use on the job at Beloit under the same arrangements that existed be-

tween Gloede's estate and Luety; and the latter paid Boehck the rental of $6 per hour for the machine, with Thim as the operator thereof, and Boehck paid Thim his wages as such operator and made the payments required for his unemployment insurance and social security tax; and the compensation insurance. On September 10th Alvin H. Jensen, vice-president of Boehck, informed Luety in a telephone conversation, that Boehck had purchased the machine and would continue the use thereof on Luety's Beloit job at a monthly rental of $685; and in a letter to Luety, dated September 12, 1942, Boehck stated that effective September 10th the rental of the machine was $685 per month and that—

"We will bill you weekly for the operator's wages, plus insurance, social security, and other similar items, and you are to agree with the operator every day on the number of hours that the machine worked, and to pay him one hour additional for greasing, maintaining and adjusting the machine, etc. You are to supply all gas, oil, grease and greasing equipment, wire rope, and other items used in maintaining the machine, including making of repairs necessary to keep the machine in the same condition as it was when delivered to you, excepting for normal wear and tear; and you are to agree to keep the machine thoroughly lubricated and not to use it for any abnormal work or work where the machine would be abused. . . ."

Copies of this letter were inclosed in a letter, which was dated September 12, 1942, and sent to the Gloede estate, in which Boehck stated,—

"Please instruct the man who is operating this machine to report at the end of every week the number of hours he has worked each day and the total for the week, for which we will send him a check whenever his report arrives. Also instruct him to agree with Luety on the number of hours that he works. In other words, have Luety or Luety's foreman okay the hours so that there is no misunderstanding later on when Luety gets his bill. Please have this operator give us

his name, address, telephone number, and we would appreciate it if you will give him a copy of this letter which is attached, and also the extra copy of letter attached which we have addressed to Luety Brothers. He can then be guided by its contents."

In accordance with Boehck's request, the inclosed copies of those letters were sent to Thim. He testified that in a subsequent conversation at Beloit Jensen—

"asked me how the machine was running and if it was going all right and that is all. Nothing further was said to me about me going to be working from then on or who I would be working for. I expected I was working for them, you know, at that time. . . . From this letter marked Ex. 3 [Boehck's letter of September 12 to Gloede's estate] I was informed that I was going to be working for Boehck and that was agreeable to me to work for the Boehck Company. And I considered myself that I was working for Boehck. I looked upon the Boehck Equipment Company as my employer; they paid me."

"There was an hour each day that I put in on oiling and greasing the machine and Luety Brothers paid me for that with a check drawn by their company. And that check was in addition to the check I got regularly in the mail from the Boehck Company."

In connection with the facts stated above the commission found that Thim agreed to the arrangement stated to him by Jensen; that Boehck carried Thim on its pay roll and paid him at the rate of $1.65 per hour, and also paid his unemployment insurance, social security tax, and the compensation insurance; that the machine was operated solely by Thim, and his status as the employee of the owner remained the same as when he was working for the Gloede estate; that on the Beloit job the city manager put out stakes designating the location of the ditch to be dug, and its depth and width were regulated by the Industrial Commission's rules, with which Thim was familiar, and given the stakes to follow he,

as an experienced operator, needed little or no supervision in the operation of the machine; that the work which was being done for Luety with the machine operated by Thim was temporary and for that particular job only; that he considered himself at all times to be an employee of Boehck, the same as he had considered himself to be an employee of Gloede for the past three years, and there was no consensual relationship except that when the machine was sold to Boehck Thim consented to be an employee of said corporation; and that the authority to discharge him rested in Boehck, and Thim's operation of the machine benefited Boehck and its business of renting such machines.

The evidence as to the above stated facts and the inference which can be reasonably drawn therefrom fully warranted the commission's findings and likewise its conclusions that Thim was an employee of Boehck at the time he was injured, and that Boehck was therefore liable to him for payment of the compensation. The fact that, while Thim was operating the machine as an employee of the owners, Gloede and subsequently his estate, on a job for which they rented the machine, with Thim as the operator thereof, to Luety, the latter gave some additional directions to Thim as to the excavating done with the machine for Luety, is of no such significance or consequence as to constitute Luety,—to the exclusion of the owner,—the employer of Thim while he was engaged in operating the machine as the employee of the owner. Even though Thim, while so operating the machine received also some directions from Luety, as to details in respect to the excavating to be done with the machine, he continued nevertheless to be the employee of the owner while engaged in the operation of the machine for the latter. Under such circumstances there is applicable, by analogy, the rule that—

"When a vehicle with a driver is furnished or lent to another, the circumstances are often such that, while the driver becomes in some respects the servant of the person to whom

the vehicle is furnished, and who has the right to tell him what to do and where to go, he is nevertheless the servant of the owner thereof in those particulars which relate directly to the management thereof, because it is implied that in the interest of such owner and as his representative, the driver will manage and direct, within reasonable limits, such matters as pertain to the safety and preservation of the vehicle. In those particulars, for the preservation of his property, it will be presumed that the owner retains the right to control the driver. *Dutton v. Amesbury National Bank,* 181 Mass. 154, 63 N. E. 405, 408; *Reagan v. Casey,* 160 Mass. 374, 36 N. E. 58; *Huff v. Ford,* 126 Mass. 24." *Hoefer v. Last,* 221 Wis. 102, 110, 111, 266 N. W. 196; *Packard v. Industrial Comm.* 213 Wis. 1, 4, 5, 250 N. W. 768; *De Forest Dairy Co. v. Friedrich,* 202 Wis. 251, 255, 232 N. W. 543; *Wagner v. Larsen,* 174 Wis. 26, 182 N. W. 336; *Campbell v. Connolly Contracting Co.* 179 Minn. 416, 229 N. W. 561; *Dahl v. Wunderlich,* 194 Minn. 35, 259 N. W. 399.

See also Restatement, 1 Agency, p. 500, sec. 227, and comments "b" and "c" and illustrations 1 and 2 on pp. 501, 502. The following comment on the latter page is directly in point in relation to the facts in the case at bar, to wit:

"A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. Normally, the general employer expects the employee to protect his interests in the use of the instrumentality and these may be divergent from the interests of the temporary employer. If the servant is expected only to give results called for by the temporary employer and to use the instrumentality as the servant would expect his general employer would desire, the original service continues. Upon this question, the fact that the general employer is in the business of renting machines and men is relevant, since in such case there is more likely to be an intent to retain control over the instrumentality. A person who is not in such business and who, gratuitously or not, as a matter not within his general business enterprise permits his servant and instrumentality to assist another, is more apt to intend to surrender control."

When Boehck became the owner of the machine on September 1, 1942, there was no change made in the status of Thim under the theretofore and then existing employee-employer relationship between him and the respective owners of the machine. Even when, on September 10, 1942, Boehck notified Luety in a telephone conversation that the rental thereafter would be $685 per month instead of $6 per hour, and in its letter of September 12th to Luety also changed, in some other respects, the terms of the renting of the machine to Luety, Boehck, by requesting in its letter of September 12th to the Gloede estate that instructions stated therein be given to Thim, continued to exercise its right of control, as the employer of Thim and owner of the machine, by directing him to attend to the details specified in its letter. The instructions which Boehck requested Gloede to give "the man [Thim] who is operating this machine to report at the end of every week the number of hours he has worked each day and the total for the week, for which we will send him a check whenever his report arrives," and "Also instruct him to agree with Luety on the number of hours that he works," and have Luety "okay" the hours, etc.; and to have "this operator give us his name, address, telephone number;" and to give a copy of Boehck's letter to Gloede and of its letter to Luety to Thim so that "He can then be guided by its contents," were all in relation to details which were incidental to Thim's operation of the machine for Boehck, and as to which it therefore had the right to direct and control performance by Thim. The giving of such instructions to Thim on behalf of Boehck at its request, and Thim's performance pursuant thereto were consistent with the continuance of his status as an employee of Boehck, and those instructions and Jensen's subsequent statements to Thim warranted his conclusions and the understanding, to which he testified, as stated above, that by Boehck's letter to the Gloede estate he was informed that he was going to be working for Boehck; that this was agreeable to him;

and that he considered himself working for Boehck and looked upon Boehck as his employer, and Boehck paid him. And Thim's conclusions in those respects are neither inconsistent with nor unwarranted by reason of any other statements in Boehck's letters of September 12th. The facts that Boehck, in connection with confirming in its letter to Luety the changes in the rental to $685 per month, instead of $6 per hour, etc., stated "We will bill you weekly for the operator's wages, plus insurance, social security, and other similar items," and that Boehck obtained reimbursement from Luety for the amounts expended by Boehck in paying those items, including the wages which it paid to Thim, did not operate to make him an employee of Luety instead of Boehck. Without the consent thereto on the part of Thim there could be no such change effected in the employee-employer relationship which had existed between him and the successive owners of the machine, and Thim could rightly conclude that, as the operator thereof after as well as before it was sold to Boehck, he was the employee of the owner thereof, as he had been theretofore; and that the employee-employer relationship, which Boehck continued by retaining Thim after September 1st as the operator of the machine would continue between himself and Boehck until he was informed in some unequivocal and effective manner that it was terminated.

The proof admits finding that there was consent on his part to be the employee of Boehck in operating the machine; but it does not admit of finding that he ever expressly or impliedly consented to be an employee of Luety, excepting for the extra hour daily when he was to grease the machine and be paid therefor by Luety at eighty-five cents per hour. Under these circumstances there can be no finding that Thim had consented to become an employee of Luety instead of Boehck, while engaged in operating the machine. *Rhinelander Paper Co. v. Industrial Comm.* 206 Wis. 215, 217, 218, 239 N. W. 412; *Hudson v. Industrial Comm.* 241 Wis.

476, 6 N. W. (2d) 217; *Northern•Trust Co. v. Industrial Comm.* 231 Wis. 133, 285 N. W. 339. And the fact that while Thim was engaged as Boehck's employee in operating the machine on the job for which it, with Thim as the operator, was rented temporarily by Boehck to Luety,—the latter also gave some directions to Thim in respect to the execution of the excavating for which Boehck had commanded the machine to be used, did not constitute Luety the employer of Thim while he was operating the machine, in the absence of consent on his part to the creation of such an employer-employee relationship. As we said in *Rhinelander Paper Co. v. Industrial Comm., supra,—*

"It is quite generally agreed that in order to transfer liability from the general employer to the one to whom the employee is loaned, there must be some consensual relationship between the loaned employee and the employer whose service he enters, sufficient to create a new employer-employee relationship. Where an employee enters the service of another at the command and pursuant to the direction of the master, no new relationship is created. While the employee may be subject to the direction of the temporary master, he is there in obedience to the command of his employer, and in doing what the new master directs him to do he is performing his duty to the employer who gave the order. Whether or not there is in a particular case such a change of relationship is often a matter of great difficulty and as to which reasonable minds may come to different conclusions. In this case the employment was temporary. It is clear that the claimant was performing services in obedience to the direction of the master and that there was no consent on his part, express or implied, sufficient to make him the employee of the American Engineering Company."

See also *Visiting Nurse Asso. v. Industrial Comm.* 195 Wis. 159, 164, 217 N. W. 646.

The decision in *Western W. & I. Bureau v. Industrial Comm.* 212 Wis. 641, 645, 647, 250 N. W. 834, upon which

plaintiffs rely, is not in point. Cronin, the applicant for compensation in that case, was one of a group of employees who had been engaged in working part time for each of two employers, and were carried on the pay roll of one of the employers, who in turn charged their salaries for work which they performed for the other employer to that employer. At the time of the injury Cronin was engaged in performing work for such other employer, and therefore we held that the other employer alone was liable for the compensation. In holding that the decision in *Rhinelander Paper Co. v. Industrial Comm., supra,* was inapplicable, we said,—

"The decision of the *Rhinelander Paper Company Case* was obviously grounded on the proposition that the work being done by the applicant for the Engineering Company was 'temporary,' and that no consent, express or implied, sufficient to make him the employee of the Engineering Company, was shown. . . . Cronin performed work for both the bureau and the railroad for nearly eleven years. His employment was obviously not so temporary as to permit us to apply to the facts of this case the rule stated in the *Rhinelander Paper Company Case.*"

The cases of *Spodick v. Nash Motors Co.* 203 Wis. 211, 232 N. W. 870, and *Seaman Body Corp. v. Industrial Comm.* 204 Wis. 157, 235 N. W. 433, are likewise not in point. In each of these cases it was held that the injured employee had consented to be loaned so as to create a new employer-employee relationship.

It follows that the commission's findings and conclusions that Thim was an employee of Boehck at the time of his injury, and that therefore it and its compensation insurance carrier were liable for the payment of the compensation ordered by the commission, should have been affirmed.

*By the Court.*—Judgment reversed, and cause remanded with directions to affirm the award ordered by the Industrial Commission.