## HATTIE CAMPBELL v. CONNOLLY CONTRACTING COMPANY AND OTHERS.[1]

February 28, 1930.

No. 27,608.

*L. N. Foster,* for relator.

*Reuther & Sullivan,* for respondent Hattie Campbell.

*Sanborn, Graves & Andre* and *John W. Fischbach,* for respondent Morris & Dougherty and Royal Indemnity Company, its insurer.

HILTON, J.

Certiorari on relation of the Connolly Contracting Company to review an order of the industrial commission awarding compensa-

[1]Reported in 229 N. W. 561.

tion to Hattie Campbell, the widow of Albert E. Campbell, deceased employe, and their three minor children, Alice, Helen, and Albert, as dependents, for his death.

Morris & Dougherty (hereinafter referred to as M & D) and the Connolly Contracting Company (hereinafter referred to as the company) were engaged in substantially the same kind of business, that of general contractors. The offices of each were in St. Paul. For five years Albert E. Campbell had been a regular employe of the company. For a year and a half he had been working with the steam shovel here involved in grading and excavating work. The principal business of M & D was railroad construction work. At the time here in question M & D were engaged in such work for a railway company at Janesville, Wisconsin, and were in need of a steam shovel for that job. It was the custom of the company to rent out its shovels and to furnish its own employes who were familiar with their operation to go along with and operate them. M & D contracted with the company for that purpose and agreed to pay $35 a day for the shovel and to pay the regular union scale of wages for the men thus furnished. This arrangement started June 2, 1928. The wages differed in amount and other particulars from those regularly paid by M & D. Campbell, the oiler, and Forseth, the engineer, were sent by the company for the work, the former to receive 66 cents and the latter $1.10 per hour with increased pay for overtime. Their names appeared on the payroll of M & D, and according to the agreement they were paid by M & D.

The practice that had always maintained was for the company to allow its employes eight hours' pay on any outside job for time consumed in going to the place of work and returning to St. Paul. Frequently the car of one of them was used for such trips. M & D secured for and delivered to the company railway transportation (free passes) for the men. However (with the knowledge of the company and without objection) it was not used, the men using the automobile belonging to Forseth. The railway transportation was returned to M & D by the company. With the knowledge of M & D's superintendent in charge of the work at Janesville and

without any objection, the men started for St. Paul, using the car in question. On that trip they were both killed in a railway grade crossing accident.

The last day's work with the shovel at Janesville was on June 22, when it was loaded on a flat car for shipment to Marinette, Wisconsin. Campbell was paid not only for that day but also on the evening thereof was paid for eight additional hours covering the time allowed for the trip home. Whether this was considered as pay for 18 hours on the 22nd or ten hours on that date and eight hours on the 23rd is immaterial.

The referee held that Campbell was an employe of M & D. On appeal the industrial commission, using the evidence taken before the referee, by a vote of two to one, held that Campbell was an employe of the company. The referee and all the commissioners were agreed that the accident arose out of and in the course of the deceased's employment. The evidence was sufficient to permit this holding, and we do not further consider it. The only question here involved is as to which one of the two concerns was the employer of Campbell. In determining this question all of the evidence is to be considered, not just parts of it. From such consideration we reach the conclusion that the company was the employer. Each party to this controversy finds support in the evidence for certain of its contentions. Under the familiar rule referred to in 1 Dunnell, Minn. Dig. (2 ed.) § 411, and cases cited, the action of the commission cannot be disturbed.

The company had no interest in the railway contract. It was only interested in receiving $35 per day for the shovel and having it well cared for and properly operated by two of its own men. There was no arrangement made by M & D as to what men should be sent; they made no contract with them as to wages or otherwise; the whole contract was made with the company. Campbell and Forseth, after finishing the work at Janesville, were to go where they were sent by the company for further work on the same shovel, in this case to Marinette. On June 2 they went to Janesville for work on the shovel because the company so directed. In so doing

they were obeying the company's orders, the same as they would any of its orders if they desired to remain in the company's employment.

M & D had the say relative to the immediate place of operation of the shovel, the amount of gravel to be handled, the hours of work and other like details incident to those particular matters, but had no authority over the men in relation to the manner of taking care of the shovel or the incidental details of such operation. M & D did not select the men in the first instance; did not have the right to discharge them or to put men of their own selection (either regular employes or otherwise) in charge of the shovel. The situation above described did not make Campbell an employe of M & D. O'Rourke v. Percy Vittum Co. 166 Minn. 251, 207 N. W. 636, and cases cited. A part of the regular business of the company was the letting out, for compensation, the shovel in question, which was to be operated by the two men selected by it.

This case is one where under the facts the definition of an "employer" as found in G. S. 1923 (1 Mason, 1927) § 4326(d), does not control. That statute reads:

"The term 'employer' * * * shall mean every person not excluded by section 8, who employs another to perform a service for hire and to whom the 'employer' directly pays wages."

The one who pays the wages direct is not under all conditions an employer. Such payment is of course a circumstance to be considered and in many instances is controlling. Many tests are at times to be considered in determining the question as to who is the employer. As was said in Ledoux v. Joncas, 163 Minn. 498, 501, 204 N. W. 635, 636, "Each case * * * must be controlled by its own facts." The rent price for the shovel with the amount earned by the men as wages constituted the consideration paid by M & D for the services rendered by the company. The company was an independent contractor in the furnishing of the shovel and its men to run it; the attending fact that under the agreement M & D were to pay the men direct instead of paying the amount

of their wages to the company and it in turn paying the men is of no consequence.

We have considered all the authorities referred to by relator; they are not contrary to the conclusions we have reached. State ex rel. D. M. Gilmore Co. v. District Court, 147 Minn. 12, 179 N. W. 216; Arterburn v. County of Redwood, 154 Minn. 338, 191 N. W. 924. The cases of Crawfordsville S. B. Co. v. Starbuck, 80 Ind. App. 649, 141 N. E. 7, and C. R. Meyer & Sons Co. v. Industrial Comm. 194 Wis. 615, 217 N. W. 408, also cited, are easily distinguishable from the instant case. In the Wisconsin case the injured person was entirely under the control of the contractor corporation to which he had been sent by the owner of the crusher furnished; for the greater part of the time he was being used for work other than operating the crusher; he was paid by the contractor, which had the right to discharge him; and could put its own men in charge of the crusher.

We have not recited all the facts appearing in the evidence; there are also others that support the conclusion reached. An employe furnished to accompany an instrumentality let by the owner thereof to another, under conditions such as are here involved, remains the employe of such owner. Antonelly v. Adam, 175 Minn. 438, 221 N. W. 716, and cases cited; Tschida v. Bratt, 179 Minn. 277, 228 N. W. 935; Driscoll v. Towle, 181 Mass. 416, 63 N. E. 922; Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. ed. 480; Claremont Country Club v. Industrial Acc. Comm. 174 Cal. 395, 163 P. 209, L. R. A. 1918F, 177; Clancy's Case, 228 Mass. 316, 117 N. E. 347; 1 Labatt, Master and Servant (2 ed.) §§ 24, 25, 34, 59, and page 176 and cases cited; Arnett v. Hayes Wheel Co. 201 Mich. 67, 166 N. W. 957; Shepard v. Jacobs, 204 Mass. 110, 90 N. E. 392, 26 L.R.A.(N.S.) 442, 134 A. S. R. 648; Emack's Case, 232 Mass. 596, 123 N. E. 86. Naturally no case can be found that is on all fours with the instant case; nor is it necessary.

In addition to the briefs and oral arguments of counsel we have had the benefit of a memorandum filed by the referee and also one by each of the industrial commissioners. The findings of the majority of the commission establish the facts in this case, and we

are bound thereby. The order of the commission is affirmed, and attorney's fees in the sum of $75 are allowed dependents.

Affirmed.

WILSON, C. J.

I dissent.

STONE, J. (dissenting).

I cannot escape the conclusion that the decision is wrong. It ignores the intention of both the Connolly company and Morris & Dougherty. Both supposed that Campbell and Forseth in going to, working on, and returning from the Wisconsin job were the employes of Morris & Dougherty. Transportation to and from the job was to be furnished by that firm, and the wages for the whole time were paid by them. I agree in the conclusion of Commissioner McColl, invoking the rule of practical construction of a contract by the parties thereto. He says that Morris & Dougherty "paid the wages and directed the labor on the work in so far as any direction was necessary, and, finally, they reported the death as being that of one of their employes. Morris & Dougherty did everything that an employer usually does with respect to an employe. The doing of all these things by Morris & Dougherty, and the failure of the Connolly Contracting Company to do any of them, is evidence of the practical construction placed on the contract by the interested firms."

I cannot go at all with the idea that on or in connection with the Wisconsin work the Connolly company had over the actions of Campbell and Forseth any of the control characteristic of that of a master over his servant. It is not enough that they selected them to go with the machine. Neither is it very material that they had the right to discharge them. The controlling thing is that *in the doing of the work* the control of Morris & Dougherty excluded that of anybody else. Had either of the men been guilty of negligence in the operation of the shovel in Wisconsin and a third party had been injured, the latter's right of recovery against Morris & Dougherty could not reasonably have been questioned upon the ground that at the time the negligent servant was not its employe.

In my judgment the case is a plain one for the application of the common law principle that where an employe, by a contract between two employers, definitely leaves the service of one and as definitely enters that of the other for stated purposes, he should be considered the employe of the latter. That rule applies to cases arising under the workmen's compensation act. 1 Schneider, Workmen's Compensation Law, 113; Scribner's Case, 231 Mass. 132, 120 N. E. 350, 3 A. L. R. 1178; Burns v. Jackson, 53 Cal. App. 345, 200 P. 80.

"Where one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as a servant of the man to whom he is lent, although he remains the general servant of the person who lent him. * * * The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired." 26 Cyc. 1285 (39 C. J. 558) quoted with approval in Puhlman v. Excelsior E. & S. C. Co. 259 Pa. 393, 103 A. 218, 219, L. R. A. 1918E, 118, and Tarr v. Hecla C. & C. Co. 265 Pa. 519, 109 A. 224; 1 Bailey (2 ed.) Personal Injuries, 50, et seq. See also Kelly v. Tyra, 103 Minn. 176, 114 N. W. 750, 115 N. W. 636, 17 L.R.A.(N.S.) 334; Tuttle v. Farmers H. W. Co. 124 Minn. 204, 144 N. W. 938.

I cannot see that Antonelly v. Adam, 175 Minn. 438, 221 N. W. 716, is much in point. That was a simple case of automobile and driver furnished for a funeral, and so the rule applicable to the letting of a vehicle and driver for hire was invoked. It was a case where the hirer merely directed the chauffeur where to go, whom to carry and what routes to take, and so it was considered that he remained the servant of the owner in the matter of managing and operating the machine so as to make the owner responsible for his negligence. That is a very different case from the one now presented, where the subject of the bailment is a power shovel or other similar piece of machinery which by contract goes definitely and far beyond the possession and control of the owner for the doing of a

work which will require a relatively long time, during which both machine and the men who operate it must necessarily be under the constant direction of the hirer. The work is his. He directs its performance in every detail. How comes it then that the men who do it are not his servants?