VIOLET TURNER v. SCHUMACHER MOTOR EXPRESS, INC. AND ANOTHER.
MOORE MOTOR FREIGHT LINES, INC. AND OTHERS, RELATORS.[1]

February 3, 1950.

No. 35,005.

*Murnane & Murnane,* for relators.
*Grannis & Grannis,* for respondent Violet Turner.

[1]Reported in 41 N. W. (2d) 182.

*Shepley, Severson & Johnson,* for respondents Schumacher Motor Express, Inc., and Employers Mutual Liability Insurance Company of Wisconsin.

FRANK T. GALLAGHER, JUSTICE.

Certiorari to review a decision of the industrial commission affirming a referee's award of compensation.

Violet Turner sought compensation for the death of her husband on behalf of herself and her two minor children. She joined as employers relator Moore Motor Freight Lines, Inc., and respondent Schumacher Motor Express, Inc., hereinafter referred to as Moore and Schumacher, respectively, together with their insurers. Moore answered the claim petition, denying that deceased was its employe at the time of his death, but admitting the remaining allegations. The matter was heard before a referee, at which time Schumacher appeared specially to contest the jurisdiction of the industrial commission. After hearing testimony on the issue, the referee ruled that the commission had jurisdiction. Schumacher answered, admitting all allegations of the petition except that deceased had been its employe. The parties stipulated that deceased died as a result of an accident arising out of and in the course of his employment, leaving for the referee's determination only the question of who was deceased's employer at the time of his death. The referee found that Moore was the employer, and dismissed the petition as to Schumacher. Both employers appealed to the industrial commission, which affirmed the findings and determination of the referee.

The facts are as follows: Both employers are interstate motor carriers licensed by the interstate commerce commission. Decedent, Maurice W. Turner, was regularly employed by Moore as a truck driver. Moore paid his wages, deducting social security taxes thereon, and carried workmen's compensation coverage upon him. On November 21, 1947, deceased was instructed by Moore to take a load to Milwaukee; to endeavor to get a return load there; and, failing that, to call Salvatore Santarsiero, Moore's president, for

instructions. Deceased called from Milwaukee and was told to proceed to Chicago and report to Moore's Chicago representative, William J. Haab. The latter testified that he was unable to procure a load for St. Paul, so he arranged an "outside load," that is, a load hauled on a flat rate basis for some other motor carrier, in this instance Schumacher. Because the regulations of the interstate commerce commission governing such transactions require a motor carrier moving such a load to lease its equipment to the carrier whose freight it is hauling, Haab specifically instructed deceased to make a lease, which he did. So far as material here, this lease provided:

"2. The lessor [Moore] will furnish for operation of the said vehicle or vehicles the required lubricants and fuel and will also furnish one or more competent drivers as may be the case.

"3. During the period of this lease the said vehicle or vehicles shall be solely and exclusively under the direction and control of the lessee [Schumacher] who shall also be liable to the shipper or consignee for any loss, damage or unreasonable delay of the cargoes, for any property damage that may be caused by the operation of the said vehicle or vehicles by the lessee, and for any public liability resulting from the said operation by the lessee subject, however to such, if any, rights or subrogation which the insurance companies of the lessee may have under the circumstances.

"4. In consideration of the foregoing, lessee agrees promptly to pay to the lessor and the lessor agrees to accept as hire of the said equipment and reimbursement for the services of any driver or drivers the following compensation: * * *."

Representatives of Schumacher told deceased where to deliver the load and, pursuant to further regulations of the interstate commerce commission, what route to follow on the return trip to St. Paul. On November 23, 1947, during the return trip, deceased died in Wisconsin of carbon monoxide poisoning. It appears that Moore made a preliminary report of the death to the interstate commerce commission by telephone and was informed that Schumacher was

to make the formal report of death. Subsequently, Schumacher's secretary contacted Moore's president to obtain the necessary information.

It is apparent from an examination of the lease that Moore would "furnish one or more competent drivers as may be the case," and it was conceded on argument that Moore had the right to substitute another competent driver for deceased at any time before starting the return trip or at any time in transit, if necessary. While it appears from the record that certain "daily log" records pertaining to deceased's last week of employment were missing, Moore's president, Santarsiero, testified: "We paid him for the two full round trips, for the week." By way of further explanation, he said:

"Well, I knew at the time of Turner's death that he had two trips coming for that week which would have amounted to $80.00 for his pay, and I believe I talked to Mrs. Turner regarding his pay, * * * and I wrote out a check for $100.00 and sent it to her and it was charged off to donations."

It is not denied that the right to discharge deceased belonged to Moore alone. Schumacher made no attempt to control the details of the vehicle's operation, except as to instructions to deceased where to deliver the load and, pursuant to further regulations of the interstate commerce commission, what route to follow on the return trip to St. Paul. Deceased, as well as Moore's other drivers, was under instructions not to release the truck to anyone except other employes of Moore.

We need consider only the question whether there was sufficient evidence to sustain the decision of the commission that deceased was an employe of Moore at the time of his death, and it is our opinion that he was. In view of this, it will not be necessary for us to consider the jurisdictional question as to Schumacher.

The question is one of fact. State ex rel. D. M. Gilmore Co. v. District Court, 147 Minn. 12, 179 N. W. 216. A number of factors may be considered in its determination. A few of these are:

(a) Who has the right of supervision over the details of the work (Antonelly v. Adam, 175 Minn. 438, 221 N. W. 716; Campbell v. Connolly Contracting Co. 179 Minn. 416, 229 N. W. 561; Otten v. University Hospitals, 229 Minn. 488, 40 N. W. [2d] 81) ; (b) whether the employe enters the service of the special employer at the instance and to further the business of the general employer (Otten v. University Hospitals, *supra;* Rhinelander Paper Co. v. Industrial Comm. 206 Wis. 215, 239 N. W. 412) ; and (c) who has the right to discharge the employe or substitute another in his stead (Grundeman v. Hector Const. Co. 195 Minn. 21, 261 N. W. 478; Campbell v. Connolly Contracting Co. *supra*). Since a new employer may not be thrust upon an employe, the latter's express or implied consent to the new relationship must be found; he must understand that he is submitting himself to the control of a new master. Dahl v. Wunderlich, 194 Minn. 35, 259 N. W. 399; Yoselowitz v. Peoples Bakery, Inc. 201 Minn. 600, 277 N. W. 221.

As applied to the situation before us, these facts have been generalized into the rule that "An employe furnished to accompany an instrumentality let by the owner thereof to another, * * * [ordinarily] remains the employe of such owner." Campbell v. Connolly Contracting Co. 179 Minn. 416, 420, 229 N. W. 561, 563. Particular reason for the rule is found in the fact that the lessor ordinarily will want to send his own operator with a valuable machine to see that it is operated and cared for properly. Anderson v. Abramson, 234 Iowa 792, 13 N. W. (2d) 315; Boehck Equipment Co. v. Industrial Comm. 246 Wis. 178, 16 N. W. (2d) 298; Lowell v. Harris, 24 Cal. App. (2d) 70, 74 P. (2d) 551. We feel that the rule must be applied in the circumstances of this case. Although the lease purported to give exclusive control over the truck to Schumacher at the time in question, that control, insofar as the driver was concerned, amounted only to the right to prescribe the cargo, destination, and route. In Antonelly v. Adam, 175 Minn. 438, 221 N. W. 716, *supra,* we said that the decisions of this court are in accord with cases holding that, where the owner of an automobile lets it for hire with a driver to another for a temporary purpose,

the owner remains liable for the negligence of the driver in managing or operating the machine, although the hirer directs the driver when and where to go, whom to carry, and what routes to take. Moore retained determinative supervision over the details of the work, paid the deceased's wages, had the right to discharge him, and had the right to substitute another driver in his place. Furthermore, there is nothing in the record to indicate that deceased understood himself to be Schumacher's employe after the execution of the lease. He more likely considered himself to be on a special assignment only. The order of the industrial commission is therefore affirmed with an allowance to employe of $250 attorney's fees and costs in this court.

Affirmed.