CATHERINE GIBSON v. MOORE MOTOR FREIGHT
LINES, INC., AND OTHERS.[1]

February 17, 1956.

No. 36,650.

*Stetson & Jacobson,* for relator.

*Johnson, Sands & Brumfield* and *Maurice C. Lizee,* for respondents.

[1]Reported in 75 N. W. (2d) 212.

DELL, CHIEF JUSTICE.

Certiorari to review a decision of the Industrial Commission, awarding relator compensation against respondent Cecil Hagerty, who carried no liability or workmen's compensation insurance, and denying an award therefor against respondent Moore Motor Freight Lines, Inc. The issue for determination is which of respondents was the employer of Paul Buckley Gibson on September 5, 1953, on which date he met death as the result of an accident arising out of and in the course of his employment.

The facts as covered by stipulation of the parties are as follows: On September 5, 1953, Gibson, while driving a tractor owned by Hagerty, and pulling a trailer attached thereto, became involved in a highway accident near Fox Lake, Illinois, as a result of which he sustained bodily injury resulting in his death on that date.

During 1953 Hagerty was engaged in the business of leasing the described tractor under written leases to various motor carriers having operating rights to Minneapolis and St. Paul. In connection therewith he furnished the drivers and paid all operating expenses for maintenance of the tractors leased as well as the salaries of the drivers furnished, in turn receiving from the lessee such fees as were mutually agreed upon.

On or about June 1, 1953, Hagerty employed Gibson to operate a tractor registered in his name under individual trip leases with various motor carriers and in connection therewith to solicit in Hagerty's name such trip lease agreements with various motor carriers having operating rights to Minneapolis and St. Paul. Under the arrangement, all the services required for driving and operating the tractor while on such trips were to be performed by Gibson.

On September 3, 1953, the tractor described, together with a trailer and driven by Gibson, were leased to a Twin Cities' certificated carrier for a single trip to Chicago. At the conclusion of this trip, in accordance with his general authority, Gibson contacted the manager of respondent Moore Motor Freight Lines, Inc., in Chicago and requested that the latter lease the tractor and trailer for a single trip to Minneapolis and St. Paul. On September 4, 1953, the Moore

Motor Freight Lines, Inc., as lessee, entered into a written lease with Hagerty as lessor (Gibson signing as agent for Hagerty) for the use of the tractor and trailer in the transportation of a load of steel from the United States Steel Company at Gary, Indiana, to the United States Steel Company at St. Paul. The lease included the following provisions:

"5. *It is understood that the leased equipment under this agreement is in the exclusive possession, control, and use of the authorized carrier* LESSEE * * *.

\* \* \* \* \*

"9. The authorized carrier LESSEE agrees before any person other than a regular employee of the authorized carrier is assigned to drive equipment operated under this lease that it will make certain that such driver is familiar with and that his employment as a driver will not result in violation of any provision of Parts 2, 3, 5, and 6 of the Motor Carriers Safety Regulations (Rev.) pertaining to 'Driving of Motor Vehicles,' 'Parts and Accessories Necessary for Safe Operations.' 'Hours of Service of Drivers,' and 'Inspection and Maintenance,' to require such drivers to furnish a certificate of physical examination in accordance with Part 1 of the Motor Carrier Safety Regulations (Rev.) pertaining to 'Qualifications of Drivers' or in lieu thereof of a photostatic copy of the original certificate of physical examination, which shall be retained in the authorized carrier's LESSEE file.

\* \* \* \* \*

"13. *The* LESSOR *agrees to deliver to the* LESSEE *the above equipment in good running order and condition; maintain the same in good working condition, furnishing all necessary oil, gasoline, tires, and repairs for the operation of said equipment and to pay all other expenses incident to such operation.*

"14. *The* LESSOR * * * *shall furnish the driver, and shall pay the driver for his services, and shall withhold any withholding or social security tax required by the U. S. government.*

\* \* \* \* \*

"17. *The* LESSOR *shall save the* LESSEE *harmless from any loss, damage or happening giving rise to claims on the part of the shippers,* * * *.

"18. *The* LESSEE *shall not be liable for the loss of, or damage to, the aforesaid equipment, however caused, while in use under the terms of this lease."* (Italics supplied.)

On the date of the lease there was in force and effect a new regulation of Interstate Commerce Commission Ex Parte MC-43, § 207.4, 49 CFR, 1954 Supp. § 207.4, governing the leasing and interchanging of vehicles by motor carriers, which required that the lessee in such cases as the present one assume "exclusive possession, control and use of the equipment, and * * * [undertake] complete assumption of responsibility in respect thereto, * * *."

After execution of the lease, Moore Motor Freight Lines, Inc., instructed Gibson to pick up the load of steel and deliver it to St. Paul. It did not give him any directions as to the route to be followed, the time or place to rest, or the manner in which the freight should be loaded or the equipment operated. Prior to the trip, in conformity with regulations of the Interstate Commerce Commission, placards stating that the equipment was operated under lease for Moore Motor Freight Lines, Inc., were attached to the doors of the tractor, and thereafter the cargo was loaded and the trip to St. Paul commenced. As stated above, on the following day during the trip, Gibson, while driving the tractor, met death in a highway accident.

On appeal, relator contends that (1) by the terms of the lease, exclusive control of the driver, equipment, and trip were placed in the hands of Moore Motor Freight Lines, Inc., and hence the latter became the employer of Gibson; and (2) that, since § 207.4 required that all responsibility for the trip and equipment be in Moore Motor Freight Lines, Inc., such company must be held to have had control of Gibson to the extent of making him its employee.

■ Unless some features can be discovered in the employment contract here; or in the new regulation of the Interstate Commerce Commission, § 207.4, which features relate to, or affect, the employer-

employee relationship and differ from those that appeared in Turner v. Schumacher Motor Express, Inc. 230 Minn. 172, 41 N. W.. (2d) 182, it would appear that our decision here must be governed by our decision therein. There, under circumstances almost identical with those in the instant case, it was determined that the lessor, which there was Moore Motor Freight Lines, Inc., the lessee in the instant case, was the employer of the driver of a truck owned by Moore Motor Freight Lines, Inc., and leased by the latter to Schumacher Motor Express, Inc., at the time the driver met death. In that case, the deceased driver had been regularly employed by Moore Motor Freight Lines, Inc., the latter paying his wages, deducting social security taxes, and carrying workmen's compensation coverage protecting him. In the course of a trip to Chicago, the driver on behalf of his employer leased the truck and equipment to Schumacher Motor Express, Inc., for a return trip to St. Paul, during which the driver met death. In the lease there involved provisions similar to those in the present lease were included. In substance, they provided that the lessor (Moore Motor Freight Lines, Inc.) would furnish required fuel, lubricants, and one or more competent drivers; that during the period of the lease the vehicles were to be solely and exclusively under the direction and control of the lessee who was to be liable for loss or damage to the cargo or for any public liability resulting from the operation of the vehicle. It further provided that the lessee was to promptly pay the lessor certain compensation for the hire of the equipment and for the reimbursement for the services of any driver. In determining that Moore Motor Freight Lines, Inc., was the employer, this court stated (230 Minn. 175, 41 N. W. [2d] 184):

"It is apparent from an examination of the lease that Moore would 'furnish one or more competent drivers as may be the case,' and it was conceded on argument that Moore had the right to substitute another competent driver for deceased at any time before starting the return trip or at any time in transit, if necessary.* * *

\* \* \* \* \*

"It is not denied that the right to discharge deceased belonged to Moore alone. Schumacher made no attempt to control the details of the vehicle's operation, except as to instructions to deceased where to deliver the load and, pursuant to further regulations of the interstate commerce commission, what route to follow * * *. Deceased, as well as Moore's other drivers, was under instructions not to release the truck to anyone except other employes of Moore.

* * * * *

"* * * these facts have been generalized into the rule that 'An employe furnished to accompany an instrumentality let by the owner thereof to another, * * * [ordinarily] remains the employe of such owner.' "

With reference to the contract provision which, there as here, placed control over the equipment in the lessee, the court stated (230 Minn. 176, 41 N. W. [2d] 184) :

"* * * Although the lease purported to give exclusive control over the truck to Schumacher at the time in question, that control, insofar as the driver was concerned, amounted only to the right to prescribe the cargo, destination, and route. * * * Moore retained determinative supervision over the details of the work, paid the deceased's wages, had the right to discharge him, and had the right to substitute another driver in his place. Furthermore, there is nothing in the record to indicate that deceased understood himself to be Schumacher's employe after the execution of the lease."

The provisions of the contract here and in the Turner case contain the same provisions insofar as they relate to control; the furnishing of the driver, as well as the payment of the latter's wages; and the withholding of social security taxes. It would follow that such case must control the present one unless § 207.4 compels a different result.

■ We find nothing in § 207.4 which effectuates a lease differing in any particular from that involved in the Turner case. The provision in such regulation that leases of this kind must provide that the lessee assume "exclusive possession, control and use of the equip-

ment, and \* \* \* [undertake] complete assumption of responsibility in respect thereto, \* \* \*" is not unlike the lease in the Turner case which, as indicated above, provided that during its term the leased vehicles (230 Minn. 174, 41 N. W. [2d] 183) "shall be solely and exclusively under the direction and control of the lessee \* \* \* who shall \* \* \* be liable \* \* \* for any loss, damage or unreasonable delay of the cargoes, for any property damage that may be caused by the operation of the said vehicle or vehicles by the lessee, and for any public liability resulting from the said operation by the lessee \* \* \*."

Further, there is nothing in the regulation which attempts to define employer-employee relationship for workmen's compensation act purposes or suggests that the Interstate Commerce Commission is therein prescribing criteria by which the state courts may determine whether the *lessor,* or the *lessee,* in a lease covered by the regulation is the *employer* of a driver of a vehicle covered thereby. See American Trucking Assns. v. United States, 344 U. S. 298, 73 S. Ct. 307, 97 L. ed. 337, where the purpose of this regulation is discussed. Even assuming that such power is vested in the commission, its failure to clearly manifest the intent to exercise it would seem to foreclose the possibility that the regulation in question would compel this court to adopt a view different from that expressed in the Turner case. As stated in Schwartz v. Texas, 344 U. S. 199, 203, 73 S. Ct. 232, 235, 97 L. ed. 231, 235: "The exercise of federal supremacy is not lightly to be presumed." Rice v. Santa Fe Elevator Corp. 331 U. S. 218, 67 S. Ct. 1146, 91 L. ed. 1447. In view of these circumstances, we must hold that our decision in the Turner case governs the instant case.

Affirmed.