434

### RAYMOND G. KIRKWOOD v. CHESTER SIKORSKI AND ANOTHER.
### ELMER WOLFSWINKEL, APPELLANT.

115 N. W. (2d) 32.

May 4, 1962—No. 38,396.

*Lewis & Bullis, Bayard Lewis,* and *Ray C. Lewis,* for appellant.
*Dorfman & Rudquist* and *Howard S. Marker,* for respondent.

OTIS, JUSTICE.

The collision out of which this action arose occurred on February 22, 1958, at the intersection of County Highway No. 18 and U. S. Highway Nos. 52 and 152 at Osseo, in Hennepin County. At the time of the accident Raymond G. Kirkwood was driving a passenger automobile and Chester Sikorski was operating a tractor owned by Elmer Wolfswinkel and leased to International Transport, Inc., to which was attached a trailer belonging to one Leslie Manske.

Kirkwood brought this action against Sikorski as driver and Wolfswinkel as owner of the vehicle which collided with him, seeking to recover for personal injuries and property damage. Wolfswinkel counterclaimed against Kirkwood for the cost of repairs to his vehicle and loss of its use. The trial court instructed the jury that at the time of the collision Sikorski was an employee of Wolfswinkel, and that under the doctrine of respondeat superior, if Sikorski was guilty of negligence which was a proximate cause of the accident, Wolfswinkel was barred from recovery. The jury found both Kirkwood and Sikorski negligent and awarded damages to neither owner. Wolfswinkel here appeals from an order denying his motion for judgment notwithstanding the verdict or for a new trial.

Although the trial court held that Sikorski was an employee of a joint venture created by the lease from Wolfswinkel to International Transport, Inc., we need not decide whether that instruction was correct since we hold that as a matter of law Wolfswinkel was himself an employer of Sikorski, and hence, under the doctrine of respondeat superior, may not recover on his counterclaim.

The sole issue presented on this appeal is whether the agreement between the owner Wolfswinkel and the lessee International Transport, Inc., for the use of the tractor Sikorski was driving divested Wolfswinkel of the attributes of control over Sikorski which are necessary to impute contributory negligence to an employer under the doctrine of respondeat superior. The facts are not in dispute. In order to keep his equipment and operator profitably employed, Wolfswinkel entered a lease with International Transport, Inc., for the purpose of hauling a caterpillar tractor from Peoria, Illinois, to Winnipeg, Manitoba. While this route was not available to Wolfswinkel, it was one over which International Transport, Inc., was authorized to operate under an Interstate Commerce Commission permit.

Under the lease agreement Wolfswinkel furnished both the tractor and the driver, subject only to the lessee's right to disapprove the particular operator and to require the owner to furnish a substitute. The driver was paid by Wolfswinkel who also furnished him workmen's compensation insurance according to the testimony of the managing agent for International Transport, Inc. In addition, the owner paid

all of the operating expenses of the vehicle including gasoline, oil, repairs, and maintenance. The compensation paid by the lessee to the owner was 75 percent of the revenue derived from the shipment. While there were specific checkpoints through which the driver had to pass in moving in and out of Canada, he was otherwise at liberty to select any route he wished between Peoria and Winnipeg. These factors militated in favor of a finding that Wolfswinkel maintained sufficient control over Sikorski to retain the relationship of employer and employee as a matter of law.

Wolfswinkel, on the other hand, vigorously contends a bailment was created by the lease, and that Sikorski's negligence was therefore not imputed to Wolfswinkel so as to bar his claim. In support of this position, he points out that the lease was one required by the Interstate Commerce Commission and was designed to vest complete control in the lessee under the commission's policy of prohibiting truckers from loaning permits to one another over specified routes. To that end, the lease reads:

"* * * It is agreed that the company [lessee] shall have exclusive control over said motor vehicle equipment during the life of this agreement, * * *."

It further provides that the lessee shall be fully responsible to the shipper and the public for the direction, conduct, condition, and operation of the leased equipment while operated by the lessee. In addition, it was the duty of the lessee to maintain a trip log, to carry casualty insurance, and to assume the cost of utility and franchise fees.

Whether International Transport, Inc., and Wolfswinkel were both employers of Sikorski we need not decide since we are satisfied that the trial court was correct in finding as a matter of law that Wolfswinkel retained sufficient control over the operation and management of his equipment to continue the relationship of employer and employee with Sikorski during the term of the lease. Our conclusion is supported by a long line of authorities originating with the so-called carriage cases. In Antonelly v. Adam, 175 Minn. 438, 221 N. W. 716, suit was brought against the owner of an automobile for injuries sustained by a passenger while an automobile and its driver were being

hired out as part of a funeral procession. In holding the owner was still the driver's employer, we there recognized the following rule (175 Minn. 441, 221 N. W. 717):

"* * * where the owner for hire lets an automobile with a driver to another for a temporary purpose he remains liable for the negligence of the driver in managing or operating the machine, although the hirer directs the driver when and where to go, whom to carry, and what routes to take. * * *

*    *    *    *    *

"* * * The presumption is that in the matter of managing and operating the cars they remained under the control and were the servants of defendant by whom they were regularly employed for that purpose; * * *."

In discussing the loaned-servant doctrine, Restatement, Agency (2 ed.) § 227, comment c, states:

"A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. Normally, the general employer expects the employee to protect his interests in the use of the instrumentality, and these may be opposed to the interests of the temporary employer."

The California court adopted this reasoning in Lowell v. Harris, 24 Cal. App. (2d) 70, 77, 74 P. (2d) 551, 556. There the court in holding that the owner remained the driver's employer under a lease agreement stated:

"* * * The operation of a motor truck through city streets is a matter of so much concern to the owner that, when he has manned the truck with a servant of his own choice as a safeguard of his own interests, clear proof must be required before he will be presumed to have surrendered full management and control to the hirer."

Other courts have reached the same conclusion in factually similar situations. Franceschino v. Mack, 174 Pa. Super. 518, 102 A. (2d) 217; Kissell v. Motor Age Transit Lines, 357 Pa. 204, 53 A. (2d)

593; Halliburton Oil Well Cementing Co. v. Paulk (5 Cir.) 180 F. (2d) 79; Viggiano v. William C. Reppenhagen, Inc. 55 N. J. Super. 114, 150 A. (2d) 40. The cases are collected in Annotation, 17 A. L. R. (2d) 1388. A Pennsylvania trial court has construed the effect of a lease similar to that with which we are here concerned. Johnson v. Hendricks, 68 York Leg. Rec. 206. There the lease provided that the truck furnished by the owner (68 York Leg. Rec. 208) "shall be under the complete control of the Lessee and subject to such use as it may desire to make of it." The Pennsylvania court distinguished between the right to exclusive control of the *equipment* and the right to control the *operator*, no provision in the lease being made for the latter. Two Minnesota cases where leases contained provisions complying with Interstate Commerce Commission regulations by vesting exclusive control over equipment in the lessee have held that such provisions did not conclusively determine the relationship between the owner and the operator. Turner v. Schumacher Motor Express, Inc. 230 Minn. 172, 41 N. W. (2d) 182; Gibson v. Moore Motor Freight Lines, Inc. 246 Minn. 359, 75 N. W. (2d) 212. Both of these cases involved the liability of the owner to pay workmen's compensation benefits for the death of a driver while equipment was under lease to another carrier. In finding that the owner retained his status as an employer, the court in the Turner case stressed the right of the owner to discharge the driver and the absence of control by the lessee over the details of the vehicle's operation, except with respect to where the load was to be delivered and the route to be followed. We there laid down the rule that an employee, furnished to accompany an instrumentality leased by the owner to another, ordinarily remains the employee of such owner, and stated (230 Minn. 176, 41 N. W. [2d] 184):

"* * * Particular reason for the rule is found in the fact that the lessor ordinarily will want to send his own operator with a valuable machine to see that it is operated and cared for properly. * * * Although the lease purported to give exclusive control over the truck to Schumacher [the lessee] at the time in question, that control, insofar as the driver was concerned, amounted only to the right to prescribe the cargo, destination, and route."

In Gibson v. Moore Motor Freight Lines, Inc. 246 Minn. 359, 365, 75 N. W. (2d) 212, 216, in construing the Interstate Commerce Commission regulation involved, 49 CFR, § 207.4, we noted:

"* * * there is nothing in the regulation which attempts to define employer-employee relationship for workmen's compensation act purposes or suggests that the Interstate Commerce Commission is therein prescribing criteria by which the state courts may determine whether the *lessor*, or the *lessee*, in a lease covered by the regulation is the *employer* of a driver of a vehicle covered thereby."

Minnesota cases dealing with the loaned-servant principle are not of great assistance. Ahlstrom v. Minneapolis, St. P. & S. S. M. R. Co. 244 Minn. 1, 68 N. W. (2d) 873; Nepstad v. Lambert, 235 Minn. 1, 50 N. W. (2d) 614. In those cases the defendant employer claimed that the negligent employee was acting as the loaned servant of a third party at the time of the accident so as to insulate defendant's liability under the doctrine of respondeat superior. However, these decisions hinged largely on who exercised detailed on-the-spot control over the actions of the negligent party when the accident occurred and hence have little application here.

Following the reasoning of the Turner and Gibson cases, we are of the opinion that the provisions of the lease, conferring on the lessee exclusive control over the equipment, do not divest appellant Wolfswinkel of the attributes of an employer. The question on which liability pivots is who retained the right to control the operation and management of the equipment at the time of the accident. Whatever the lease may have provided, it is clear that it was not the intention of the parties that the lessee assume responsibility for the driver's conduct beyond directing him to the load to be hauled and advising him of the source and destination of the shipment. As we pointed out in the Turner case, the owner has a very practical and substantial interest in how his equipment is handled. While the lessee is, of course, equally concerned with the safe arrival of his cargo, it is the lessor who has hired the driver, fixed his salary, determined the rules which govern his operation of the vehicle, given him whatever training in proper maintenance is prescribed, and has reposed in the driver the

responsibility of bringing the equipment back intact. Under the circumstances, it seems wholly unrealistic to assume that the lessee exercised the kind of control which governed the events leading to the occurrence or avoidance of the accident. For good or for evil, whatever external influences preconditioned Sikorski's driving, and were likely to preordain or prevent the happening of the accident, emanated from his relationship with his permanent employer and not from his contract with the temporary lessee.

We therefore hold that at the time of the accident the owner, Wolfswinkel, was an employer of the driver, Sikorski, within the doctrine of respondeat superior, and that the trial court was correct in so instructing the jury.

Affirmed.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.