## RUTH TRETTER v. DART TRANSIT COMPANY AND ANOTHER.

135 N. W. (2d) 484.

May 7, 1965—No. 39,358.

*Bertie & Bettenburg* and *James R. Bettenburg,* for relator.
*Firestone, Fink, Krawetz, Miley & O'Neill, James P. Miley,* and *Kenneth J. Maas, Jr.,* for respondents.

MURPHY, JUSTICE.

This case is before us on certiorari upon relation of Ruth Tretter, widow of Raymond Tretter, to review a decision of the Industrial Commission. It is another in a series of cases reviewed by this court involving the issue of whether the decedent, the owner and operator of a tractor leased to a certified motor carrier, was at the time of his fatal injury an independent contractor or an employee entitled to workmen's compensation.

It appears from the record that the decedent, Raymond Tretter, owned and operated a tractor which was pulling a trailer owned by Dart Transit Company. License for the tractor was issued to and paid for by decedent. He purchased and paid for the fuel and oil used by the tractor. The tractor was leased to Dart, a certified common carrier, which holds a certificate of public necessity and convenience for the transportation of property in interstate commerce. Pertinent parts of the lease recite:

"1. Time and date of the beginning of this agreement shall be July 10, 1961 and shall end July 10, 1962.

"2. It is understood that the leased equipment under this agreement is in the exclusive possession, control, and use of the authorized carrier, LESSEE, and that the said LESSEE assumes full responsibility in respect to the operation of the equipment to the public, the shippers, and the I.C.C.

"3. In consideration of the leasing of the equipment used (and of the services of the driver of said equipment), the LESSEE agrees to pay to the LESSOR as per settlement sheets attached.

"4. This equipment shall be used to transport property for: Shipper: As authorized from as authorized to as authorized including pickup at point of origin and delivery at destination.

\* \* \* \* \*

"6. The LESSOR agrees to deliver to the LESSEE the above equipment in good running order and condition and to fully maintain, service, and keep the equipment in good repair, and to pay all other expenses incident to the operation of said equipment. If LESSOR fails to maintain said equipment to the satisfaction of LESSEE, said LESSEE may cancel this lease forthwith.

"7. The LESSOR shall furnish the driver, and shall pay the driver for his services, and shall withhold any withholding or social security tax required by the State or Federal government.

\* \* \* \* \*

"9. The LESSOR agrees that LESSEE shall not be liable for any loss or damage to or destruction of said leased equipment while it is being operated by or is in the care of and control of driver(s) furnished therewith. The LESSOR agrees to indemnify and save LESSEE harmless against (1) any claims resulting from the injury or death of any driver(s) furnished therewith, (2) any loss or damage resulting from the negligence, incompetence or dishonesty of such driver(s), and (3) of any loss, damage or happening giving rise to claims on the part of shippers.

"10. The LESSEE is to carry and pay for public liability, property damage, and cargo insurance incident to the operation of said

equipment herein while such leased equipment is being operated exclusively in the interests of the LESSEE and not otherwise, but it is specifically and mutually agreed by and between LESSOR and LESSEE that such insurance so agreed to be carried by LESSEE shall be insurance for the benefit of the LESSEE and the public, and LESSOR only while in the service of the LESSEE except as hereinbefore provided."

On December 21, 1961, while this contract was in force and while the leased equipment was being used in pulling a Dart trailer, an accident occurred as a result of which the decedent was fatally injured. In the interval between July 10, 1961, and December 17, 1961, the decedent had made about 90 one-way trips between St. Paul and Chicago for Dart.

The most recent statement of this court relating to the test for determining whether one is an employee or an independent contractor is to be found in Guhlke v. Roberts Truck Lines, 268 Minn. 141, 143, 128 N. W. (2d) 324, 326, where we said:

"In this court Mrs. Guhlke contends that the evidence supports the finding of the Industrial Commission to the effect that Doughboy was an employer of Vernon H. Guhlke. It is conceded that the factors applied in testing the relationship are: (1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge. In determining whether the status is one of employee or independent contractor, the most important factor considered in light of the nature of the work involved is the right of the employer to control the means and manner of performance."

In measuring the facts in this case by the foregoing rule, it may be said that numerous factors which appear in the record identify the decedent as an independent contractor rather than an employee. He owned his own equipment which represented a substantial financial outlay; he leased it to the carrier. In the operation of it, he paid for its maintenance including oil and gasoline, carried his own collision

insurance, and was compensated on the basis of a percentage of the tariff rather than on a wage scale. Social security tax was not withheld by the transportation company, nor did it withhold income tax. He filed his own tax returns as one engaged in an independent business. He was free to reject or accept loads for transportation as he desired. At all times the tractor was under his control.

Similar arrangements were considered by this court in Turner v. Schumacher Motor Express, Inc. 230 Minn. 172, 41 N. W. (2d) 182, and Gibson v. Moore Motor Freight Lines, Inc. 246 Minn. 359, 75 N. W. (2d) 212, in both of which cases the commission found that employees of the owner-operator of the tractor were not employees of the lessee transit company. In passing upon the fact issue as to whether the decedent in this case was an independent contractor or an employee, the Industrial Commission said:

"The question here is one of fact. * * * And the lease involved in the instant case is substantially similar to the leases in the Turner and Gibson cases. We can find little in the instant case to indicate an employer-employee relationship between decedent and Dart. Dart neither contracted for nor exercised any material control over the deceased. The deceased was free to drive the tractor himself, or furnish other drivers. He merely chose to drive it himself. He had the right to turn down the driving of any load at any time, and occasionally he did. Dart had no right to hire or fire the tractor driver. Dart, of course, could terminate the lease or probably exercise influence by withholding loads.

"No detailed instructions were given to deceased. The mere instruction of where to pick up the cargo and where to drop it (information generally on the bill of lading) did not constitute any substantial control over the deceased, nor did instructions as to the temperature that the cargo was to be kept at constitute control. * * *

"One indication of the deceased being an employe was the fact that Dart included him in its list of people to be covered in a Group Policy. However, the evidence is clear that this was done as a convenience to the deceased (as well as the need of getting sufficient

people to form a 'group') and the deceased was billed for his full part of the premium."

It is relator's contention that the employer-employee relationship is established by the fact that Dart's Interstate Commerce Commission authority was the primary means of performing the work; that the mode of payment was comparable to a commission which took the place of wages; that the lessee furnished and paid for the expenses of the trailer; that its terminal was used in connection with the work; and that it had a right to discharge Tretter by refusing to provide work for him. Relator relies principally on Elwell v. Fake, 264 Minn. 329, 119 N. W. (2d) 19, and Lindbery v. J. A. Danens & Son, Inc. 266 Minn. 420, 123 N. W. (2d) 695.

We think that both of these authorities may be distinguished on the facts. The Elwell case involved the claim of the dependents of a deceased employee of the owner of a leased truck. The findings of the Industrial Commission that decedent was also an employee of the lessee of the truck at the time of the fatal accident was supported by the record, which established the right of control by the lessee over the deceased driver's employment. There, the tractor owner had other interests and made the trailer available to the transportation company with the privilege of hiring an employee to operate it. The transportation company furnished the driver with a uniform; his name was carried on its callboard with the names of various drivers; he was called for duty without notice to the tractor owner, nor was the tractor owner aware of the fact that decedent was driving the tractor on the day of the accident. Decedent there was listed as an employee of the corporation under its group policy of hospitalization and life insurance which covered all drivers under an arrangement whereby the corporation paid part of the premiums. We think the particular facts in that case distinguish it from the one before us and supported the finding of the commission that the decedent there was at the time of the accident in the employment of the transportation company.

The Lindbery case may likewise be distinguished. There it was held that there was an employer-employee relationship where a police-

man supplemented his income by driving a dump truck owned by him for an excavating contractor, being paid on an hourly basis. Under the facts in that case (266 Minn. 423, 123 N. W. [2d] 697) "he was doing precisely the same work being performed by all of the other drivers who were employed" by the contractor-employer.

■ It is also contended by relator that only the certified carrier may lawfully engage in the transportation of goods in interstate commerce and that the form of lease entered into by the decedent did not change his essential status as an employee.

Relator relies on certain authorities, DeBerry v. Coker Freight Lines, 234 S. C. 304, 108 S. E. (2d) 114; Brown v. L. H. Bottoms Truck Lines, Inc. 227 N. C. 299, 42 S. E. (2d) 71; and Brandenburg v. Buchta, 233 Ind. 221, 117 N. E. (2d) 643, which seem to hold that since the transportation is subject to rules and regulations governing interstate or intrastate commerce and the equipment is used under the carrier's franchise, the control and operation for the period of the lease is necessarily in the carrier and the driver, whether the owner of the equipment or an employee of the owner, is, in contemplation of law, an employee of the carrier. A similar contention was made in Gibson v. Moore Motor Freight Lines, Inc. 246 Minn. 359, 365, 75 N. W. (2d) 212, 216, where, after a discussion of certain interstate commerce regulations, we said:

"* * * [T]here is nothing in the regulation which attempts to define employer-employee relationship for workmen's compensation act purposes or suggests that the Interstate Commerce Commission is therein prescribing criteria by which the state courts may determine whether the *lessor,* or the *lessee,* in a lease covered by the regulation is the *employer* of a driver of a vehicle covered thereby. * * * Even assuming that such power is vested in the commission, its failure to clearly manifest the intent to exercise it would seem to foreclose the possibility that the regulation in question would compel this court to adopt a view different from that expressed in the Turner case. As stated in Schwartz v. Texas, 344 U. S. 199, 203, 73 S. Ct. 232, 235, 97 L. ed. 231, 235: 'The exercise of federal supremacy is not lightly

to be presumed.' Rice v. Santa Fe Elevator Corp. 331 U. S. 218, 67 S. Ct. 1146, 91 L. ed. 1447."

It is agreed by counsel for both parties that under the lease arrangement, which we have considered in this and other cases, the unincorporated owner-operator of the tractor finds himself in a position where he is without the protection of workmen's compensation. This situation results from the nature of his independent activity. It would appear that the relationship entails mutual advantages for the independent tractor owner and the transportation company which uses his services. The company is spared investment in expensive equipment and the cost of its maintenance and is relieved from management-labor problems, as well as other expenses which the employer-employee relationship involves. The tractor owner, on the other hand, provides the equipment which he owns and manages. It may be assumed that he is motivated by the opportunity for profit and depends upon his own initiative, judgment, and energy for his success. Behner v. Industrial Comm. 154 Ohio St. 433, 96 N. E. (2d) 403. If the parties wish to contract on this basis, we know of no authority which stands in their way. We can only say that each case must be determined on its own facts, and where as here it cannot be said that the lease is merely an arrangement to conceal the true nature of the relationship between the parties, we must affirm.

Affirmed.