Alert T. NEWLAND, Sr., et al.,
Respondents,

v.

OVERLAND EXPRESS, INC., et al., Appellants.

No. 50034.

Supreme Court of Minnesota.

July 3, 1980.
Rehearing Denied Sept. 9, 1980.

Jardine, Logan & O'Brien and Charles E. Gillin, St. Paul, for appellants.

DeParcq, Anderson, Perl, Hunegs & Rudquist, Richard G. Hunegs, and Peter W. Riley, Minneapolis, for appellants; Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan and O. C. Adamson, Minneapolis, of counsel.

Heard before KELLY, TODD, and WAHL, JJ., and considered and decided by the court en banc.

WAHL, Justice.

The plaintiffs, Alert and Geraldine Newland, brought suit against Overland Express, Inc. and Charles Stark to recover damages for injuries sustained by Mr. Newland. Overland appeals from the order of the Hennepin County District Court granting the plaintiffs' motion for partial summary judgment and striking defendants' asserted defense that plaintiffs' sole remedy was provided by the Workers' Compensation Act. We affirm.

Plaintiff Newland, a truck driver, was asleep in the sleeper cab of a semi-tractor truck being driven by defendant Stark when Stark apparently lost control of the vehicle, ran off the road, and struck a parked truck. The tractor was totally destroyed, and as a result of the accident the plaintiff is now a quadriplegic. Newland and Stark were employed by Marvin Fritz, who leased the tractor involved in the accident to defendant Overland Express, Inc. Newland received workers' compensation benefits from Fritz' insurer.

The issues raised on appeal are: (1) whether the plaintiff was an employee of Overland Express, Inc. at the time of the accident, so as to bar plaintiffs' tort action under Minn.Stat. § 176.031 (1978), and (2) whether Fritz and Overland Express were engaged in a common enterprise, so as to bar plaintiffs' tort action under Minn.Stat. § 176.061, subds. 1 and 4 (1978).

1. The defendants maintain that Stark and Newland were employees of both Fritz and Overland and, therefore, that the plaintiffs' action is barred under the "exclusive remedy defense" of the Minnesota Workers' Compensation Act, Minn.Stat. § 176.031 (1978). That section provides, in relevant part:

> The liability of an employer prescribed by this chapter is exclusive and in the place of any other liability to such employee, his personal representative, surviving spouse, parent, any child, dependent, next of kin, or other person entitled to recover damages on account of such injury or death.

The relevant facts are as follows: The tractor involved in the accident was owned by Fritz. Fritz has no intrastate or interstate authority from the I.C.C. to transport goods, so, since 1970, and prior to this accident, he had leased his tractors to various trucking companies, of which Overland was one. In August 1978, he owned 11 tractors, all of which were leased to Overland, and had 14 truck driver employees. Overland Express, the owner of the trailer involved in the accident, is an irregular-route common carrier hauling freight in several states. The company owns no tractors and, according to the testimony of Overland's vice president of operations, has no truck driver employees.

Fritz' normal hiring procedure is that a prospective driver comes to him and fills out an application. After Fritz approves the application, he takes it to Overland's Safety Department. There, Overland checks out the driver's work record to see if he meets all I.C.C., D.O.T. and Overland requirements. If so, Overland notifies Fritz that the driver can be sent to Overland for a day of tests and an orientation speech. When the driver has passed all these requirements, he can begin hauling Overland's trailers. He is given a copy of Overland's Standard Operating Procedures and told he must comply with these rules while hauling the company's trailers.

When Overland needs a tractor, it contacts Fritz. Fritz can accept or reject any particular shipment. If he accepts the shipment, he selects the tractor and drivers and sends the drivers to pick up the trailer, supplying them with the necessary papers. Overland never specifies which driver should drive the tractor. If a driver fails to meet the requirements of the I.C.C., the Department of Transportation, or those of Overland, Overland can tell Fritz not to employ that driver hauling trucks for Overland; but Fritz can still use that driver for any other company, as long as the driver meets the requirements of that company.

The lease agreement between Fritz and Overland refers several times to Fritz as an independent contractor and provides that Fritz shall have "sole power and authority to select, engage and control all employees" used by Fritz in the performance of the contract. Although Overland reimburses Fritz for maintenance or fuel purchased for its trailers, Fritz is required to pay all the expenses related to the tractor. In the event of a breakdown Fritz authorizes repairs. Fritz, not Overland, pays his drivers so much per mile, withholds income taxes and Social Security, and provides workers' compensation and unemployment compensation benefits.

The test we have used in determining whether an employer-employee relationship exists for purposes of obtaining workers' compensation benefits involves a consideration of the following factors: (1) the right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of materials or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge. *Brinkman v. Page Trucking Co., Inc.,* 270 N.W.2d 278, 280 (Minn.1978); *Guhlke v. Roberts Truck Lines,* 268 Minn.

141, 143, 128 N.W.2d 324, 326 (1964). The most important factor in determining whether the status is one of employee or independent contractor is the right of the employer to control the performance. *Id.*

■ The evidence of Overland's control over plaintiff is not sufficient to lead us to conclude that an employer-employee relationship existed at the time of the accident. Although the lease provides, pursuant to federal regulations, that Overland has exclusive control, possession and use of the leased equipment and accepts full and complete responsibility to the public, shippers, and regulatory bodies, this court has held that this language is not determinative of employee status for workers' compensation purposes. *Gibson v. Moore Motor Freight Lines, Inc.,* 246 Minn. 359, 75 N.W.2d 212 (1956); *Tretter v. Dart Transit Co.,* 271 Minn. 131, 135 N.W.2d 484 (1965). Overland had no authority to hire drivers. Its authority to fire was limited to prohibiting a driver from driving for Overland; Fritz could continue to use the driver wherever he wanted. Overland paid no wages and provided no benefits to plaintiff, except for a single cash bonus plaintiff received for safe driving. Overland had no control over which tractor and driver would be used on any trip, nor is there any evidence that Overland dictated what routes to follow or controlled details of the trips, other than those related to the freight itself.

■ Overland also argues that it is liable for plaintiff's workers' compensation under the loaned servant doctrine. The loaned servant doctrine provides that if an employer lends an employee to another for the performance of some special service, then that employee, with respect to that special service, may become the employee of the person to whom his services have been lent. *Danek v. Meldrum Mfg. and Engineering Co., Inc.,* 312 Minn. 404, 252 N.W.2d 255 (1977). Thus the worker remains the employee of the person who lent him but may also be the employee of the person to whom he is lent (the special employer). The special employer becomes liable for workers' compensation and therefore immune from tort suit only if the following three conditions are satisfied: (1) the employee has made a contract for hire, express or implied, with the special employer; (2) the work being done is essentially that of the special employer; and (3) the special employer has the right to control the details of the work. *Id.* at 408, 252 N.W.2d at 258. In addition, the employee's consent, express or implied, must be found in order to establish the employment relationship. Such consent, while easily implied by submission to the employer's right to control in the independent contractor situation, is not so easily implied by submission to control in the loaned employee context, because apparent submission may be no more than continued obedience to the general employer. *Rademaker v. Archer Daniels Midland Co.,* 310 Minn. 240, 247 N.W.2d 28 (1976). When, as in the instant case, a defendant raises the loaned servant doctrine as an affirmative defense to a plaintiff's tort claim, the burden rests with the defendant to prove that there was consent to the alleged special employment relationship. *Danek v. Meldrum Mfg. and Engineering Co., Inc.,* 312 Minn. at 409, 252 N.W.2d at 259.

There was no express contract for hire between Overland and the plaintiff. The work being done by the plaintiff, driving tractor-trucks leased to another, was the work of Fritz. Fritz indicated that he had nothing to do with Overland's freight and that, as long as he was paid for every mile his tractors were on the road, he did not care whether they hauled any freight. Overland did not have the right to control the selection of the drivers or the manner in which the drivers handled Fritz' tractors. More importantly, there is no evidence that the plaintiff consented to any control by Overland when he accepted employment by Fritz.

It is this important element of consent that distinguishes the instant case from *Danek v. Meldrum Mfg. and Engineering Co., Inc.,* 312 Minn. 404, 252 N.W.2d 255 (1977), upon which Overland heavily relies. In *Danek,* the plaintiff, an employee of Labor Pool, a temporary manpower service, was

injured at a punchpress while on a temporary job. This court affirmed the trial court's decision that as a matter of law the plaintiff was an employee of both Labor Pool and of Meldrum Manufacturing and Engineering Company, for whom she was working when she was injured. We noted that the work plaintiff performed was solely Meldrum's and that only Meldrum had the right to control the particular act giving rise to her injury. Moreover, consent to the special employment relationship could be implied as a matter of law in the labor broker context, because when plaintiff was hired by Labor Pool she knew that all of her work would actually be performed for, and controlled by, various customers of Labor Pool.

Fritz, however, is not a labor broker, and such consent cannot be implied under the facts of this case. Fritz provides Overland with equipment in addition to labor, and under his contract with Overland he, rather than Overland, has the right to control his tractors, their drivers, and the manner in which the tractors are operated. Newland considered Fritz to be his employer. There is nothing inherent in the nature of the relationship between Fritz, Newland, and Overland which makes it reasonable to imply consent as a matter of law as there was in the labor broker context.

This court has held in several cases involving facts very similar to those in the instant case that no employment relationship exists between the lessees of trucks and drivers. *See Brinkman v. Page Trucking Co., Inc.*, 270 N.W.2d 278 (Minn.1978); *Tretter v. Dart Transit Co.*, 271 Minn. 131, 135 N.W.2d 484 (1965); *Guhlke v. Roberts Truck Lines*, 268 Minn. 141, 128 N.W.2d 324 (1964); *Gibson v. Moore Motor Freight Lines, Inc.*, 246 Minn. 359, 75 N.W.2d 212 (1956); *Turner v. Schumacher Motor Express, Inc.*, 230 Minn. 172, 41 N.W.2d 182 (1950).

Those cases where an employer-employee relationship has been found are distinguishable from the instant case. In *Hagberg v. Colonial and Pacific Frigidways, Inc.*, 279 Minn. 396, 403–04, 157 N.W.2d 33, 38–39 (1968), we affirmed the trial court's finding of an employment relationship, where the

lease provided that the lessee had control of the trucks and drivers and could discharge the drivers at any time. In *Elwell v. Fake*, 264 Minn. 329, 119 N.W.2d 19 (1962), the lessee provided uniforms for the drivers, made repairs on the equipment, hired and contacted drivers directly about specific trips without notifying the owner-lessor, instructed drivers on which routes to take, and carried insurance for the drivers. *Hansen v. Adent*, 238 Minn. 540, 57 N.W.2d 681 (1953), can be distinguished from the instant case by the fact that there the lessee paid the driver's wages and deducted Social Security from the check. Finally, in *Erickson v. Holland*, 295 N.W.2d 576 (Minn. 1980), the lease provided that the driver was hired subject to the lessee's approval and could be discharged by either the lessor or lessee, the lessee paid for tractor repairs and provided workers' compensation insurance, and the driver went to the lessor only to seek employment with the lessee.

We hold, though the case is a close one, that the facts support the trial court's determination that Newland was employed by Fritz, and not by Overland Express, Inc., at the time of the injury.

2. The defendants next contend that the plaintiffs' suit is barred by the "election of remedies" defense contained in Minn.Stat. § 176.061 (1978). That section provides, in pertinent part:

Subdivision 1. Election of remedies. Where an injury or death for which compensation is payable occurs under circumstances which create a legal liability for damages on the part of a party other than the employer and at the time of such injury or death that party was insured or self-insured in accordance with this chapter, the employee, in case of injury, or his dependents, in case of death, may proceed either at law against that party to recover damages or against the employer for compensation, but not against both.

\*     \*     \*     \*     \*     \*

Subd. 4. Application of subdivisions 1, 2, 3. The provisions of subdivisions 1, 2, and 3 apply only where the employer liable for compensation and the other

party legally liable for damages are insured or self-insured and engaged in the due course of business, (a) in furtherance of a common enterprise, or (b) the accomplishment of the same or related purposes in operation on the premises where the injury was received at the time thereof.

To be applicable, this defense must meet three requirements: (1) the employers must be engaged in the same project; (2) the employees must be working together (common activity); and (3) in such fashion that they are subject to the same or similar hazards.[1] *McCourtie v. United States Steel Corp.*, 253 Minn. 501, 506, 93 N.W.2d 552, 556 (1958).

These requirements are not met in the instant case. Since Overland owns no tractors and hires no truck drivers directly, the employees of Fritz and Overland are not working together, nor are they subject to the same hazards. Fritz' employees are subject to the risks of traffic accidents. Overland's employees are subject to the hazards incident to clerical work and truckloading. Therefore, the trial court did not err by striking the defense under Minn. Stat. § 176.061 (1978).

Affirmed.

---

1. The statute also requires the third party to be "insured or self-insured in accordance with this chapter." This requirement has not been discussed at length by either party.